**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Lamine SENE, Defendant–Appellant.**

No. 01–1358.

United States Court of Appeals, Sixth Circuit.

Nov. 28, 2001.

Before SUHRHEINRICH and COLE, Circuit Judges; COLLIER, District Judge.*

## OPINION

COLE, Circuit Judge.

Defendant–Appellant Lamine Sene appeals his conviction and sentence for bank fraud, a violation of 18 U.S.C. § 1344, claiming the evidence was insufficient to support the conviction. Judge Marianne O. Battani presided over a jury trial, which commenced November 7, 2000 in the United States District Court for the Eastern District of Michigan. On November 9, the jury returned a verdict of guilty; Defendant was sentenced to fifteen months imprisonment and three years of supervised release, a special assessment in the amount of $100 and restitution in the amount of $28,951.33.

Because we find sufficient evidence in the record to support the conviction, we

---

* The Honorable Curtis L. Collier, United States District Judge for the Eastern District of Tennessee, sitting by designation.

AFFIRM the judgment of the district court.

## BACKGROUND

Sene is a Senegalese citizen who entered this country in September 1994. After a stint in New York City selling suits, Sene moved to Detroit, Michigan, in June 1996, where he worked at various national chain restaurants. He met and married Jelina Powe in October 1997, but was in the process of divorcing her little more than a year later. While in Detroit, he met Nicole Steanhouse with whom he eventually fathered a daughter.

Steanhouse was the custodian of an account at the National Bank of Detroit ("NBD Bank")[1] in the name of another of her minor daughters. According to the government's case, sometime before April 1999, Sene told Steanhouse that his father, a Senegalese diplomat, was going to send him money, but that, due to Sene's pending divorce, he needed another person's account in which to deposit the money. Sometime later, Sene gave Steanhouse a bogus check to be drawn on the account of Metropolitan Agribusiness, Ltd. at Chase Manhattan Bank in New York City. The check was payable to "Nicole E. Steanhouse" in the amount of $28,951.33 and was dated April 20, 1999. Steanhouse endorsed the check and, on April 22, deposited the check in her daughter's bank account. She claimed that at no time from receipt to deposit did she notice the business name on the check. Sene admitted to investigators that he had accompanied Steanhouse to the bank to deposit the check, but denied knowledge that it was counterfeit. Seven days later, on April 29, Sene, Steanhouse and other unidentified persons drove to four NBD bank branches.[2] At each branch, Steanhouse entered the lobby and withdrew cash at the teller window: $9,500 at the first three branches and $450 at the last branch.[3] She testified that after visiting the last branch, she gave the cash to Sene, but did not go home with him.

Chase Manhattan Bank notified NBD Bank that the check was counterfeit on April 30, 1999. Melissa Page, a fraud investigator for NBD Bank, contacted Steanhouse on July 12, 1999, to inquire about the check. Steanhouse denied that she had deposited the check and denied knowledge that it was fraudulent.[4] Several months later, Steanhouse was again questioned about the check, this time by the FBI, after which she told Sene that she feared the FBI was "coming after [her]."

On June 28, 2000, agents of the Immigration and Naturalization Service along with other federal authorities confronted Sene in a hair-braiding salon in Grand Rapids, Michigan. Sene identified himself as the manager of the salon and produced a false Michigan driver's license bearing the name "Ibrahim Ousmane Talli." Immediately thereafter, federal agents placed Sene under arrest.

1. NBD Bank is also referred to as "Bank One" in the record due to merger activity between the two companies.

2. Steanhouse's testimony is murky on the mechanics of the withdrawals. She asserted that she and Sene drove to the first branch to make a withdrawal, but then persons she did not know escorted her to the other three branches.

3. Melissa Page, a witness for the government, testified that each of these withdrawals was less than $10,000; withdrawals of more than $10,000 require the financial institution to report the transaction to the Treasury Department. *See* 31 C.F.R. § 103.22(b)(1).

4. At trial, Steanhouse testified that she had "no idea" why she denied depositing the check.

Sene was indicted on one count of bank fraud, a violation of 18 U.S.C. § 1344, on August 3, 2000, and a jury trial commenced on November 7, 2000. The government presented Steanhouse as its primary witness in the case. Sene testified in his own defense and claimed that he had no involvement in the bank fraud and knew nothing about the check. The jury returned a verdict of guilty on November 9, 2000, and this appeal follows.

## DISCUSSION

Defendant failed to raise his sufficiency claim in the district court as required by Fed.R.Crim.P. 29. Generally, this failure means that, absent some "manifest miscarriage of justice[,][the] defendant has forfeited his right to challenge the sufficiency of the evidence." *United States v. Swidan*, 888 F.2d 1076, 1080 (6th Cir.1989) (internal quotations marks omitted). Nevertheless, Fed. R.Crim. P 52(b) allows this court to examine whether such a "manifest miscarriage of justice" has occurred using the plain error standard of review. *See United States v. Olano*, 507 U.S. 725, 731, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

■ This circuit has adopted a four-part test for plain error when the error was not raised in the district court. First, there must be an error, that is, deviation from a legal rule (unless that rule has been waived). Second, the error must be plain or obvious under current law. Third, the error must affect substantial rights. Fourth, the error must seriously affect the fairness, integrity, or public reputation of judicial proceedings. If these four criteria are met, the court should then exercise its discretion to notice a forfeited error. *See United States v. Carter*, 236 F.3d 777, 783–84 (6th Cir.2001) (citations omitted).

■ To convict Sene, the government had to prove four elements of bank fraud,

"(1) that the defendant knowingly executed or attempted to execute a scheme to defraud a financial institution; (2) that the defendant did so with the intent to defraud; ... (3) that the financial institution was insured by the FDIC," *United States v. Hoglund*, 178 F.3d 410, 412–13 (6th Cir.1999), and (4) that the deceit informing the scheme to defraud was material. *Neder v. United States*, 527 U.S. 1, 25, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). The central inquiry for this court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Salgado*, 250 F.3d 438, 446 (6th Cir.2001) (citations omitted). In this case, we find sufficient evidence to support the verdict.

Essentially, this is a swearing contest between Steanhouse and Sene. Steanhouse was the government's primary witness. Sene took the stand in his own defense. The jury believed Steanhouse and did not believe Sene. Sene now requests this court to overturn his conviction because Steanhouse's testimony was not credible. This we will not do. Steanhouse's testimony was vague and at times evasive, but we must refrain from second-guessing a jury's assessment of witness credibility. *See Salgado*, 250 F.3d at 446; *see also United States v. Garcia*, 866 F.2d 147, 151–52 (6th Cir.1989) (noting that the opportunity of the trial court to assess witness credibility is superior to that of the appellate court).

Based upon the record as a whole, a rational jury could have concluded that the government proved all the necessary elements of bank fraud as specified in *Hoglund* and *Neder*. There was evidence of knowledge and intent: Sene had connections to New York City; he told Steanhouse that his father was going to send him money; he did not want to use his

own bank account; he gave the counterfeit check to Steanhouse; he accompanied Steanhouse both when she deposited and when she withdrew the funds; Steanhouse went to several different banks; each large withdrawal was just under the amount necessary to alert the Treasury Department. The bank was FDIC insured by stipulation. Finally, passing the counterfeit check was clearly material to the fraud. In short, we find no error that would justify reversal.

## CONCLUSION

For all of the foregoing reasons, we AFFIRM the judgment of the district court.