**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Larry Napoleon COOPER, Defendant-Appellant.**

No. 74–2164.

United States Court of Appeals, Sixth Circuit.

Aug. 25, 1975.

H. Fred Hoefle, Cincinnati, Ohio (Court appointed CJA), for defendant-appellant.

Frederick M. Coleman, U.S. Atty., Clarence B. Taylor, Asst. U.S. Atty., Cleveland, Ohio, for plaintiff-appellee.

Before PHILLIPS, Chief Judge, and WEICK and LIVELY, Circuit Judges.

PHILLIPS, Chief Judge.

Larry Napoleon Cooper was convicted of violating 18 U.S.C. § 875(b)[1] by transmitting in interstate commerce telephone communications containing threats to injure the person of another with intent to extort.

---

1. § 875. Interstate communications:

(b) Whoever, with intent to extort from any person, firm, association, or corporation, any money or other thing of value, transmits in interstate commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined not more than $5,000 or imprisoned not more than than twenty years, or both.

The indictment charged as follows:

On or about the sixteenth day of March, 1974, in the Northern District of Ohio, Eastern Division, LARRY NAPOLEON COOPER, GWENDOLYN Y. McCUTCHEON and CAROL JEAN HOLMES, willfully and knowingly, and with the intent to extort free and unpaid air time from Radio Station WABC, did transmit in interstate commerce from Wooster, Ohio to New York City, New York a number of telephone communications to the said Radio Station WABC, which telephone communications contained therein threats to injure the person of an individual identified only as "Juez", a hostage, that is, that they would kill said person. In violation of Title 18 United States Code, Section 875(b).

Cooper and two girl companions were the organizers of a new political party known as "The Alternative Political Action Committee, Inc." In order to make their views known, they conceived an extortion plan to get free time on New York City radio station WABC. Cooper and his friends were living in an apartment in Wooster, Ohio.

A telephone call was placed by Cooper to the radio station. In this conversation Cooper stated that he was a kidnapper and that he was holding a hostage. In a second call a short time later Cooper said that he was one of three persons holding a hostage, that all the doors had been nailed shut, and that there was absolutely no way the police could surprise them in time to save the life of the hostage. Cooper stated that if his demands were met by the radio station, the hostage would be released and an innocent life would be spared. In one conversation Cooper stated that the hostage was not a rich man and said that he was interested in seeing if anybody cares about a hostage even though he is not rich. Cooper asserted that if the police undertook to rescue the hostage, all four of the occupants of the apartment would die. Thirteen telephone calls were placed, all but two of which were recorded and placed in evidence. Wooster police went to the barricaded apartment and retrieved a note which stated in essence what had been said in the telephone calls to the radio station.

The ransom demand was that Cooper be allowed four hours of free radio time to explain his political views. The radio station assembled a panel consisting of the Dean of the New York University Law School, a psychologist and an economist, and taped a telephone interview with Cooper in readiness for the broadcast. An announcement was made over the air that the radio station had agreed to play the tape recording of the panel discussion in return for the safe release of the hostage.

Throughout the period of negotiations Cooper referred to the hostage as "Juez". There were no reports of anyone who was missing who might be the hostage or as to what might be the true identity of "Juez".

The business manager of the radio station testified that the four hours of radio time demanded by Cooper, at the time scheduled to be programmed, were worth approximately $7000.

The investigation of the case was conducted by the entire police force of Wooster, Ohio, consisting of 28 police officers, together with fifteen to twenty FBI agents in Ohio and a number of FBI agents in New York City.

When Cooper and his companions finally emerged from the apartment, it was disclosed that they did not have a living person as hostage, but were holding 66 copies of the Constitution of the United States. Thereupon the radio station cancelled the scheduled broadcast.

The principal contention made by Cooper on appeal is that, since no actual person was involved as hostage, the threats and extortion carried out by Cooper and his companions were not a violation of the statute under which he was convicted. See Note 1, *supra*.

We find no reported decision involving this precise question in interpreting the statute. District Judge Thomas D. Lambros stated that: "The statute di-

rects itself not to the transmission of a threat, but to the transmission of a communication containing a threat."

 We agree with the construction of the statute adopted by Judge Lambros and reject the hypertechnical interpretation asserted by Cooper. The purpose of the statute is to prohibit extortion through interstate communications, and not merely to protect either persons or property. The gravamen of the crime is the threat itself. The intent which is required for this crime is the specific intent to extort, and "it is not necessary to prove the specific intent to injure or the present ability to carry out the threat." *United States v. Holder,* 302 F.Supp. 296, 300 (D.C.Mont.1969), *aff'd,* 427 F.2d 715 (9th Cir. 1970) (footnote omitted). We find this situation similar to a case in which the defendants do not have the "present ability to carry out the threat". We are not willing to engraft an exception to the statute whereby the maker of a bona fide extortionate threat can later disclaim any criminal conduct by showing that he meant something other than the natural and probable inferences which could be drawn from his communications.

We therefore, conclude that Judge Lambros was correct in his interpretation of the statute. It is undisputed that Cooper transmitted in interstate commerce a communication containing a threat to injure the person of another. We agree that he cannot escape the consequences of this action by the fact that his alleged "hostage" was not an actual person.

■■ It is also contended that the District Court erred by requiring excessive bail and by refusing to order the following witnesses to be subpoenaed for the defense at Government expense:

David Rockefeller, Chase Manhattan Bank; Professor John U. Monroe, President, Miles College, Birmingham, Alabama; "Tanya", alias Patricia Hearst, c/o Symbionese Liberation Army; Milton Friedman, Univesity of Chicago; J. Paul Getty, c/o E. F. Hutton, New York; Richard M. Nixon; Nelson Rockefeller, New York; Clarence Kelly, Director, Federal Bureau of Investigation, Washington; Director, Central Intelligence Agency, Washington; William Simon, Secretary of the Treasury, Washington; Arthur F. Burns, Chairman, Federal Reserve Board, Washington.

We find these and all other contentions of appellant to be without merit.

Affirmed.