*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 12a0104p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
────────────────

UNITED STATES OF AMERICA,

                *Plaintiff-Appellee,*

    *v.*

ALLISON LENORE COSS (10-2330) and
SCOTT EDWARD SIPPOLA (10-2331),
            *Defendants-Appellants.*

Nos. 10-2330/2331

Appeal from the United States District Court
for the Western District of Michigan at Marquette.
Nos. 10-00021-001; 10-00021-002—R. Allan Edgar, District Judge.

Argued: March 9, 2012

Decided and Filed: April 16, 2012

Before: MOORE, SUTTON, and DONALD, Circuit Judges.

────────────────

## COUNSEL

**ARGUED:** Sarah E. Henderson, Marquette, Michigan, for Appellants. Phillip J. Green, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Sarah E. Henderson, Marquette, Michigan, for Appellants. Kathleen G. Sample, Maarten Vermaat, ASSISTANT UNITED STATES ATTORNEYS, Marquette, Michigan, for Appellee.

────────────────

## OPINION

────────────────

    KAREN NELSON MOORE, Circuit Judge. This direct criminal appeal concerns the conviction of defendants Scott Edward Sippola ("Sippola") and Allison Lenore Coss ("Coss") for extortion of a celebrity. Sippola and Coss challenge the sufficiency of the indictment forming the basis for their convictions, as well as the constitutionality of the

1

extortion statute under which they were charged.  They also appeal the district court's determination that they were not entitled to a downward adjustment for acceptance of responsibility pursuant to § 3E1.1 of the United States Sentencing Guidelines ("U.S.S.G.").    Because the indictment was sufficient, the extortion statute is constitutional, and their sentences were properly imposed, we AFFIRM the defendants' convictions and sentences.

## I.  BACKGROUND AND PROCEDURAL HISTORY

### A.  Background

In April 2004, John Stamos ("Stamos"), a well-known actor, visited the Walt Disney World resort area in Orlando, Florida with a group of male friends.  During the trip, Stamos met Coss, who was seventeen years old at the time, at an eighteen-and-over night club at Pleasure Island.[1]  Coss gave Stamos her phone number and, the following day, Stamos invited Coss and her girlfriend, Qynn, to join Stamos and his friends in a guided tour of the Disney parks.  That evening Coss and Qynn also attended a party at Stamos's hotel room.  Alcohol was served at the party, and Coss testified that illegal drugs, including cocaine and ecstasy, were used by attendees.  Photographs of Stamos and Coss were taken during the party.  Prior to leaving Florida, Stamos and Coss exchanged email addresses.

Stamos and Coss corresponded periodically for five or six years following their meeting in Florida.  In addition, in October 2005, Coss flew to Chicago to visit Stamos while he was filming an episode of the television show "ER."[2]  Stamos characterized their relationship as "friends," R. 13 (Trial Tr. at 367:15, 368:19), and testified that their email correspondence was "sweet" and "flirty," *id.* at 368:12-22.  Coss also testified that

---

[1]At trial, Coss testified that she told Stamos she was seventeen years old.  Stamos testified that Coss told him that she was on college spring break, that she did not tell him that she was seventeen years old, and that he assumed that she was eighteen years old.  Stamos testified that he learned only a few weeks before the 2010 trial that Coss was seventeen years old in April 2004.

[2]Stamos purchased the plane ticket for Coss's travel.

she considered Stamos a "friend," R. 114 (Trial Tr. at 812:9-10), although she maintained that they kissed while in Florida and Chicago, *id.* at 766:9-769:17, 772:2-3.

In 2008, Coss began dating Sippola. After Sippola saw photographs that Coss had of Stamos from the trip to Florida in 2004, Sippola suggested that they attempt to sell them. Subsequently, the two devised and executed a plan to obtain money from Stamos in exchange for the photographs. The scheme involved the creation of two fictitious personas through whom Coss and Sippola initiated email correspondence with Stamos: "Jessica T." and "Brian L."

On September 15, 2009, Coss and Sippola sent Stamos an email purporting to be from "Jessica Taylor" via the email address "jessi_t0909@yahoo.com." In the email, "Jessica Taylor" claimed to be a seventeen-year-old girl whom Stamos had impregnated during a sexual encounter while on vacation. On September 19, 2009, after receiving no response from Stamos, Coss and Sippola sent a second email from the "Jessica Taylor" email account that urged Stamos to respond and stated: "That night was full of drinking and drugs and I am sure you do not want any of those pictures to get out." Tr. Exh. App. at 2. Stamos sent both emails from "Jessica Taylor" to his lawyer, and his lawyer sent a cease-and-desist letter to the email account. Stamos did not receive any further emails from "Jessica Taylor."

In October 2009, Coss initiated email correspondence with Stamos, which continued through the end of November 2009. Throughout this correspondence, Coss relayed to Stamos that someone, whom she later identified as "Brian," had obtained "bad" photographs from the night of the party in April 2004.[3] *See, e.g.*, Tr. Exh. App. at 11, 19. In subsequent emails, Coss told Stamos that there were pictures of them using drugs and "trashing the hotel room." *Id.* at 19. Coss also told Stamos that "Brian" was threatening to sell the photographs to a tabloid unless Coss purchased the photographs from him, and Coss asked for Stamos's assistance in resolving the matter.

---

[3]Coss suggested that a relative of her girlfriend Qynn, who had died in a car accident a few years earlier, may have come across the pictures when going through Qynn's personal effects.

Eventually, Coss suggested that Stamos and "Brian" communicate directly regarding Stamos's potential purchase of the photographs. Coss and Sippola, pretending to be "Brian," then initiated correspondence with Stamos regarding his purchase of the photographs from the email address "bdawgs8181@yahoo.com." By this point in the communications, Stamos's lawyer had contacted law enforcement and the Federal Bureau of Investigation ("FBI") had launched an investigation.[4] The FBI advised Stamos on correspondence with "Brian" from this point forward. Eventually Stamos and "Brian" reached agreement on a purchase price of $680,000 for the photographs.[5] Arrangements were made for one of Stamos's associates to provide "Brian" with $680,000 in cash in exchange for the photographs outside of a private airport in Marquette, Michigan. Coss and Sippola were arrested near the scene of the planned exchange several hours prior to its scheduled execution.

**B. Procedural History**

On May 11, 2010, Coss and Sippola were indicted on one count of conspiracy to extort money by use of interstate communications in violation of 18 U.S.C. §§ 371 and 875(d) (Count One) and two counts of transmission of interstate communications of threat to injure the reputation of another with intent to extort money in violation of 18 U.S.C. §§ 875(d) and 2(a) (Counts Two and Three). On July 6, 2010, Coss and Sippola each moved to dismiss the indictment claiming that it was defective insofar as it failed to allege facts constituting a violation of 18 U.S.C. § 875(d) and that 18 U.S.C. § 875(d) was unconstitutionally vague and overbroad. The district court denied their motions because they were untimely and without merit. The case then proceeded to trial and the jury returned a verdict of guilty on all counts as to both defendants. Coss and Sippola were each sentenced to forty-eight months of imprisonment on Count One and twenty-four months of imprisonment on Counts Two and Three to be served concurrently. Coss and Sippola timely appeal their convictions and sentences.

---

[4]Stamos testified that, although he initially believed Coss's representations that she was being harassed about the photographs, he became suspicious when Coss told him that she had paid "Brian" ten-thousand dollars for a single photograph that did not have incriminating content.

[5]Coss and Sippola, posing as "Brian L.," had by this point sent Stamos three sample photographs.

## II. ANALYSIS

### A.  Indictment

Coss and Sippola argue that, in order to avoid constitutional infirmities, 18 U.S.C. § 875(d) must be "read narrowly, so as to prohibit only *unlawful* threats" and not merely *wrongful* threats.  Appellant Coss Br. at 20 (emphasis added); Appellant Sippola Br. at 20 (emphasis added).  However, they also argue that if the statute is construed to prohibit *unlawful* threats, then the indictment failed to allege facts sufficient to constitute a violation of the statute.  We consider each argument in turn.

#### 1.  Timeliness of Defendants' Motions to Dismiss

Although the district court considered and rejected the merits of defendants' statutory and constitutional challenges to the indictment, the district court also held that their motions to dismiss were "untimely" insofar as they were filed "long after the deadline for pretrial motions" set by the district court "expired."  R. 73 (Dist. Ct. Op. at 1).

"Federal Rules of Criminal Procedure 12(b)(3)(A) & (B) provide that motions alleging a defect in . . . the indictment must be raised before trial."  *United States v. Brown*, 498 F.3d 523, 527-28 (6th Cir.), *cert. denied*, 552 U.S. 1050 (2007) (internal quotation marks omitted).  Failure to do so "by the deadline the court sets under Rule 12(c)" constitutes waiver of the defense by the party.  Fed. R. Crim. P. 12(e).  However, "[f]or good cause, the court may grant relief from the waiver."  *Id.*  "This Court 'strictly applies Rule 12(b), and has repeatedly held that failure to raise 12(b) motions in a timely fashion precludes appellate review.'"  *Brown*, 498 F.3d at 528 (quoting *United States v. Oldfield*, 859 F.2d 392, 396 (6th Cir. 1988)).  Thus, defenses raised before the district court in an untimely Rule 12(b) motion are deemed waived on appeal even if the district court, in addition to rejecting the 12(b) motion on timeliness grounds, also considered the merits of the defenses asserted.  *Oldfield*, 859 F.2d at 397.

The district court clearly held that defendants' motions to dismiss were untimely and that there was no justification for the delay.  R. 73 (Dist. Ct. Op. at 1).[6] Nevertheless, Coss and Sippola assert that this court may properly consider their appeal because their challenge to the indictment falls within an exception to Rule 12(b)'s time limitations, *Oldfield*, 859 F.2d at 397 (recognizing Rule 12(b)(3)'s exception to timeliness constraints for a challenge "that the indictment fails to charge or set out an offense"), and because the Sixth Circuit recognizes that challenges to an indictment may be raised for the first time on appeal, *United States v. Davis*, 306 F.3d 398, 411 (6th Cir. 2002) ("[W]here a defendant does not challenge an indictment until appeal, the indictment must be construed liberally in favor of its sufficiency.") (internal quotation marks omitted), *cert. denied*, 537 U.S. 1208 (2003).[7]  Ultimately, we need not decide whether defendants' challenges to the indictment are properly presented on appeal. Even assuming arguendo that their claims are properly before us, Coss and Sippola do not state a basis for relief from their convictions.  *See Oldfield*, 859 F.2d at 398.

### 2. Sufficiency of the Indictment

The district court "read[] into 18 U.S.C. § 875(d) the requirement that the threat must be wrongful" and held that the indictment was "not deficient."  R. 73 (Dist. Ct. Op. at 2).  Both determinations are questions of law that we review de novo.  *United States v. McMurray*, 653 F.3d 367, 370 (6th Cir. 2011) ("We review de novo challenges to the sufficiency of an indictment."); *United States v. Batti*, 631 F.3d 371, 375 (6th Cir. 2011) ("A matter requiring statutory interpretation is a question of law requiring de novo review . . . .") (internal quotation marks omitted).

---

[6]On appeal, defendants contend that the reason their motions were untimely was that the time allotted for pre-trial motions was insufficient.  Defendants also suggest that they were concentrating on settlement negotiations and sought to assert these defenses only after settlement negotiations ended. Appellant Coss Br. at 13; Appellant Sippola Br. at 13-14.

[7]The government has not responded to defendants' timeliness argument in its brief and defends the convictions solely on the merits of the underlying challenges to the indictment.

### a.  Meaning of 18 U.S.C. § 875(d)

The "starting point" for any question of statutory interpretation "is the language of the statute itself."  *Batti*, 631 F.3d at 375 (internal quotation marks omitted).  Title 18 U.S.C. § 875(d) provides as follows:

> Whoever, *with intent to extort* from any person, firm, association, or corporation, any money or other thing of value, transmits in interstate or foreign commerce any communication containing *any threat to injure the property or reputation* of the addressee or of another or the reputation of a deceased person or any threat to accuse the addressee or any other person of a crime, shall be fined under this title or imprisoned not more than two years, or both.

(emphasis added).  The precise meaning of "extort" and "threat" in the context of 18 U.S.C. § 875(d) is an issue of first impression in the Sixth Circuit.[8]  However, in a well-reasoned, thorough opinion, the Second Circuit considered questions as to the meaning of 18 U.S.C. § 875(d) similar to those presented here.[9]  *See United States v. Jackson*, 180 F.3d 55 (2d Cir. 1999), *reh'g granted*, 196 F.3d 383 (2d Cir. 1999) (holding failure to instruct jury on wrongfulness element to be harmless error under *Neder v. United States*, 527 U.S. 1 (1999)), *cert. denied*, 530 U.S. 1267 (2000).  We find the Second Circuit's analysis persuasive and agree that 18 U.S.C. § 875(d) should be interpreted to criminalize only threats that are "wrongful."

The Second Circuit concluded that a "wrongfulness" requirement was implicit in 18 U.S.C. § 875(d) by analyzing the structure and substance of 18 U.S.C. § 875 as a whole, the ordinary meaning of extortion, and 18 U.S.C. § 875(d)'s legislative history.  Its reasoning on each point is persuasive.  The Second Circuit noted that each of the various subsections in 18 U.S.C. § 875 criminalizes conduct "that plainly is inherently

---

[8]The closest this Circuit has come to construing 18 U.S.C. § 875(d) is holding that § 875(d) "cannot be considered a 'crime of violence' under U.S.S.G. § 4B1.2[(a)(1)] because the offense does not have as an element the use, attempted use, or threatened use of physical force against *the person* of another."  *United States v. Clements*, 144 F.3d 981, 983 (6th Cir. 1998).  In *Clements*, we did however recognize that extortion is an enumerated "crime of violence" under U.S.S.G. § 4B1.2(a)(2).  *Id.*

[9]The Second Circuit was interpreting 18 U.S.C. § 875(d) in the context of a challenge to erroneous jury instructions.

wrongful." *Id.* at 67.  Subsection (a) criminalizes a "demand or request for a ransom or reward for the release of any kidnaped person," 18 U.S.C. § 875(a), while subsections (b) and (c) both criminalize a "threat to kidnap" or a "threat to injure the person of another," 18 U.S.C. §§ 875(b), (c).  That these subsections all criminalize "conduct that plainly is inherently wrongful" suggests that Congress also meant to criminalize "inherently wrongful" conduct in subsection (d)—that is "inherently wrongful" threats to property or reputation.  *Jackson*, 180 F.3d at 67.**[10]**

The "intent to extort" element of § 875(d) supports the conclusion that Congress intended to criminalize only wrongful threats.  While admittedly the statute does not define extortion, the term's plain meaning, as well as its definition in other statutory contexts, illuminates its significance with respect to § 875(d).  As the Second Circuit noted, the definition of "extort" in *Black's Law Dictionary* is "[t]o gain by *wrongful* methods, to obtain in an unlawful manner . . . ."  *Id.* at 69 (emphasis added).  The Hobbs Act defines extortion as "obtaining of property from another, with his consent, induced by *wrongful* use of actual or threatened force, violence, or fear, or under color of official right."  *Id.* at 67 (quoting 18 U.S.C. § 1951(b)(2)) (internal quotation marks omitted) (emphasis in original).  As evidenced by the fairly extensive legislative history surveyed by the Second Circuit, there is strong evidence to suggest that Congress intended extortion to mean the same thing in 18 U.S.C. § 875 as it does in the Hobbs Act.  *See id.* at 68-70 (discussing how the predecessor to the Hobbs Act, the Anti-Racketeering Act of 1934, 18 U.S.C. § 420a-420e, was enacted almost contemporaneously with the predecessor to 18 U.S.C. § 875).  Thus, by including "intent to extort" as an element of § 875(d), Congress linked the statute to the broader concept of extortion, which carries with it the use of a *wrongful* threat to procure something of value.

---

**[10]** It could be argued that the structure of the statute suggests that Congress viewed *all* "threat[s] to injure property or reputation" as inherently wrongful.  *See Jackson*, 180 F.3d at 66.  The Second Circuit rejected this interpretation, citing concerns that it would capture speech that Congress certainly would not have intended to criminalize.  *Id.* at 67.  We agree that Congress could not have meant to criminalize all threats to injure property or reputation.  In fact, neither party has argued that such an interpretation is proper.

Coss and Sippola do contend, however, that because each of the subsections criminalizes conduct that is inherently unlawful, an unlawful-threat requirement should be read into subsection (d).  We reject this interpretation of § 875(d) for the reasons explained in this opinion.

While Coss and Sippola agree that Congress meant to criminalize something more than "threats to reputation," they argue that the something more must be not merely "wrongful" but "unlawful."[11]  Coss and Sippola argue that this strict interpretation is necessary because the term "wrongful" is so ambiguous as to render the statute constitutionally infirm.  However, Coss and Sippola overlook the fact that to accept their interpretation of § 875(d) would be to unmoor the crime of extortion in a significant respect from its historically understood meaning.  *See id.* at 68-69 (discussing the "generally accepted definition" of extortion).  Moreover, as exemplified by the Second Circuit's analysis of what constitutes a wrongful threat, the meaning of wrongfulness is sufficiently circumscribed and readily understandable in this context.

The law of extortion[12] has always recognized the paradox that extortion often criminalizes the contemporaneous performance of otherwise independently lawful acts.  *See United States v. Valenzeno*, 123 F.3d 365, 372 n.3 (6th Cir. 1997) (Moore, J., concurring) (noting extensive literature regarding the "paradox in the law of blackmail").  Scholars have struggled to reconcile this paradox, both by adducing a principled explanation for the distinction between lawful bargaining and criminal extortion, and by justifying extortion's criminalization in law and economics terms.  *See generally* James Lindgren, *Unraveling the Paradox of Blackmail*, 84 COLUM. L. REV. 670 (1984) (discussing the theories of prominent scholars such as Arthur Goodhart, Robert Nozick, Lawrence Friedman, Richard Posner, and Richard Epstein).  Arguably, none of these scholarly efforts has been entirely successful; the precise contours of what does and does not constitute extortion remain undefined and often riddled with inconsistency and circularity in a variety of criminal contexts.  *See, e.g., id.* (discussing inherent flaws in all prominent theories); *see also* Stuart P. Green, *Theft by Coercion:  Extortion, Blackmail, and Hard Bargaining*, 44 WASHBURN L. J. 553, 554-55 (2005) (discussing inadequacy of theories as explanatory frameworks in the white-collar criminal context

---

[11]At oral argument, counsel for Coss and Sippola clarified that they refer to an unlawful threat in either the criminal or civil sense.

[12]Extortion is generally understood to be synonymous with blackmail.  James Lindgren, *Unraveling the Paradox of Blackmail*, 84 COLUM. L. REV. 670, 673 (1984).

and arguing for insertion of an unlawful-threat requirement to provide clarity and coherence to the law of extortion. We recognize that the present inquiry implicates these conceptual challenges. However, we need not reconcile the entire law of extortion. We must discern only the meaning of Congress's language in 18 U.S.C. § 875(d) in the context before us.

The *Jackson* court did not have occasion to decide whether an "unlawful," as opposed to "wrongful," threat requirement should be read into 18 U.S.C. § 875(d). In *Jackson*, the government argued that the statute criminalized *all* threats to reputation, while the defendant argued that the statute criminalized only *wrongful* threats to reputation. *See* 180 F.3d at 66. The Second Circuit agreed with the defendant[13] and, in adopting the wrongful-threat reading, described "the type of threat to reputation . . . [that] has no nexus to a claim of right" as one kind of "inherently wrongful" threat. *Id.* at 70. The Second Circuit provided examples to illustrate the dividing line between wrongful threats and permissible threats, justified by a "claim of right." *See id.* at 70-71. By dissecting the logic of these examples, we are convinced of the virtue of the Second Circuit's reasoning.

Consider, first, the most classic extortion scenario where individual X demands money from individual Y in exchange for individual X's silence or agreement to destroy evidence of individual Y's marital infidelity. In this instance, the threat to reputation is wrongful because individual X has no claim of right against individual Y to the money demanded. This is clear because as soon as the marital infidelity is exposed individual X loses her ability to demand the money from individual Y. Individual X's only leverage or claim to the money demanded from individual Y is the threat of exposing the marital infidelity and, thus, individual X's threat has no nexus to a true claim of right. By way of contrast, consider the Second Circuit's example of a country club manager who threatens to publish a list of members delinquent in their dues if the members do not

---

[13]In support of its conclusion, the Second Circuit recognized that the breadth of § 875(d) without a wrongful-threat requirement would be "troubl[ing] . . . for plainly not all threats to engage in speech that will have the effect of damaging another person's reputation, even if a forbearance from speaking is conditioned on the payment of money, are wrongful." *Jackson*, 180 F.3d at 67.

promptly pay the manager their outstanding account balances. *Id.* at 71. In that instance, there is a nexus between the threat and a claim of right: The duty of the members to pay the country club the outstanding dues exists independently of the threat and will continue to exist even if the club manager publishes the list as threatened. The law recognizes the club manager's threat as a lawful and valid exercise of his enforcement rights and, therefore, does not criminalize his conduct as extortion.

The questions posed by the parties require us to apply and expand upon this logic provided in *Jackson*. At first blush, it is not entirely clear that the parties' arguments are so different from each other. At least some "wrongful" threats under the Second Circuit's "claim of right" definition would also be unlawful in a criminal or civil sense—such threats could implicate defamation or fraud. Moreover, identification of a "claim of right" requires reference to preexisting legal standards and thereby utilizes these standards in distinguishing lawful from unlawful conduct. Nevertheless, the two standards implicate an important difference. To require that a threat be unlawful would be to require that the prosecution demonstrate beyond a reasonable doubt that the threat in question was independently illegal in either the criminal or civil sense. We see no reason, nor any historical or statutory basis, for reading such a requirement into 18 U.S.C. § 875(d).

The crime of extortion has never been defined strictly in terms of the lawfulness or unlawfulness of one of the actor's underlying supporting actions.[14] Indeed, the hallmark of extortion, and its attendant complexities, is that it often criminalizes conduct that is otherwise lawful.[15] *See* Lindgren, *supra* at 680 ("The paradox of blackmail,

---

[14] Indeed, were it so circumscribed, one might wonder why the crime of extortion even exists. Aside from perhaps bringing into the criminal arena certain civil illegalities that are otherwise traditionally left to private-enforcement mechanisms, the law of extortion would be superfluous and duplicative. Because it is unlikely that Congress intended such duplication, it is more logical to conclude that Congress meant to criminalize a separate set of conduct that otherwise evaded the purview of law enforcement.

[15] One quintessential example, and indeed one of the most commonly prosecuted instances of extortion, is a threat to expose prior undetected criminal wrongdoing. *See* Richard A. Posner, *Blackmail, Privacy, and Freedom of Contract*, 141 U. PA. L. REV. 1817, 1842 (1993). Although exposing, or threatening to expose, actual prior criminal wrongdoing is not otherwise unlawful, Congress explicitly criminalized this conduct in 18 U.S.C. § 873. ("Whoever, under a threat of informing, or as a consideration for not informing, against any violation of any law of the United States, demands or receives any money or other valuable thing, shall be fined under this title or imprisoned not more than one year,

however, lies precisely in the fact that the crime may involve acts, or threatened acts, that would be legitimate when taken in isolation."). Thus, to adopt the position that Coss and Sippola advocate would be to depart in a significant respect from the traditional understanding of extortion. *See* Green, *supra* at 580 (recognizing that limiting extortion to unlawful threats would exclude "threats to expose embarrassing true information" which "cultural understanding traditionally associated with the offense of blackmail").[16] Such a significant departure is unwarranted where there is no indication that this was Congress's intention, and, as the Second Circuit's analysis illustrates, the "claim of right" wrongfulness standard is readily discernible and easily understandable.

Accordingly, we affirm the district court's holding that 18 U.S.C. § 875(d) carries with it an implicit "wrongful threat" requirement. Doing so harmonizes subsection (d) with subsections (a), (b), and (c) of 18 U.S.C. § 875, and the "intent to extort" element of subsection (d) itself. It also aligns § 875(d) with the commonly understood meaning of extortion. Utilizing this interpretation of the statute, we now consider whether the indictment alleged sufficient facts to charge Coss and Sippola under 18 U.S.C. § 875(d).

### b. Sufficiency of the Indictment

"[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Anderson*, 605 F.3d 404, 411 (6th Cir. 2010) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)) (internal quotation marks omitted). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly,

_____

or both.").

[16]In a sense, extortion functions as a gap-filler providing liability for threats based on true information, which in most instances would not otherwise result in liability. *See, e.g., Bennett v. MIS Corp.*, 607 F.3d 1076, 1101 (6th Cir. 2010) (recognizing that Michigan common-law fraud requires proof of a *false* statement or representation); *Answers in Genesis of Kentucky, Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 471 (6th Cir. 2009) ("Truth is an absolute defense to defamation.").

without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'" *United States v. Heller*, 579 F.2d 990, 999 (6th Cir. 1978) (quoting *United States v. Carll*, 105 U.S. 611, 612 (1881)) (internal quotation marks omitted).  However, "it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." *United States v. Landham*, 251 F.3d 1072, 1079 (6th Cir. 2001) (quoting *Hamling*, 418 U.S. at 117-18) (internal quotation marks omitted) (emphasis in original omitted).

Having determined that a wrongful-threat requirement is implicit in 18 U.S.C. § 875(d), we can easily conclude that the indictment was sufficient.  The indictment specifically alleged that the defendants acted "with intent to extort" and that the communications they used contained "a wrongful threat to injure the reputation of the addressee."  *See id.* at 1, 8-9; *cf. Heller*, 579 F.2d at 999 (holding indictment to be "fatally defective" for failing to "charge" the defendant with the "intent to extort" in a prosecution under 18 U.S.C. § 875(a)).  From the facts alleged in the indictment, a jury could reasonably conclude that both of these allegations were true.

The indictment set out Coss's and Sippola's scheme involving the creation of fictitious personas "Jessica Taylor" and "Brian L." in order to induce Stamos to pay $680,000 in exchange for the photographs by threatening otherwise to sell the photographs to a tabloid magazine and damage Stamos's reputation.  *See* R. 17 (Indictment ¶¶ 6-9).  The threat that Coss and Sippola made—that they would sell the photographs to a tabloid unless Stamos paid them $680,000 in cash—was wrongful because Coss and Sippola had no claim of right to $680,000 in cash from Stamos.  Their only leverage for obtaining this money was the threat of selling the photographs to a tabloid, as evidenced by the fact that if they had actually sold the photographs to a tabloid, they would have no longer had a basis for insisting that Stamos pay them $680,000 in cash.  Thus, because Coss and Stamos were not using their threat to collect on a debt owed to them, or to exercise any other claim of right against Stamos, their threat had no nexus to a valid claim of right and was wrongful.  Moreover, this wrongful

threat was made with the deliberate intention of extracting the desired sum of money from Stamos.  The indictment alleged an elaborate scheme that Coss and Sippola carefully executed over time to achieve their desired result.  From these allegations, a jury could also conclude that both Coss and Sippola acted with the "intent to extort."

Although Coss and Sippola are correct that they may have had a lawful right to possess the photographs and a lawful right to offer Stamos the opportunity to purchase the photographs, their conduct became unlawful when their offer to Stamos was made in the form of a wrongful threat accompanied by an intent to extort.  Thus, the indictment, by including both the "wrongful threat" and "intent to extort" elements with accompanying factual allegations, gave Coss and Sippola ample notice of the charges they must defend and the reason that their conduct was alleged to be criminal.  Moreover, the detail provided in the indictment assured Coss and Sippola an opportunity to challenge any subsequent prosecutions arising out of their conduct under this scheme.  Consequently, we conclude that the indictment was sufficient.

### 3.  Constitutional Challenges to the Indictment

Coss and Sippola argue that 18 U.S.C. § 875(d), construed to include a wrongful-threat requirement, is unconstitutionally vague and overbroad insofar as it infringes on commercial speech protected by the First Amendment.  The district court rejected both the vagueness and overbreadth claims.  We review de novo challenges to the constitutionality of a statute. *United States v. Bowers*, 594 F.3d 522, 527 (6th Cir.), *cert. denied*, 131 S. Ct. 340 (2010).

"As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Gonzales v. Carhart*, 550 U.S. 124, 148-49 (2007) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)) (internal quotation marks omitted). "Although ordinarily '[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others,' we have relaxed that requirement in the First Amendment context, permitting

plaintiffs to argue that a statute is overbroad because it is unclear whether it regulates a substantial amount of protected speech." *United States v. Williams*, 553 U.S. 285, 304 (2008) (quoting *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494-95 (1982)). "To show that a statute is unconstitutionally overbroad, [a party] must demonstrate from the text of the statute and from actual fact that a substantial number of instances exist in which the law cannot be applied constitutionally." *Am. Booksellers Found. for Free Expression v. Strickland*, 601 F.3d 622, 627 (6th Cir. 2010) (quoting *Connection Distrib. Co. v. Holder*, 557 F.3d 321, 336 (6th Cir. 2009) (en banc)) (internal quotation marks and alterations in original omitted).

Defendants' constitutional challenges fail because 18 U.S.C. § 875(d) criminalizes, in a clear and precise manner, extortionate threats, which are true threats, and therefore not protected speech. *See Landham*, 251 F.3d at 1080 ("[I]t is well established that true threats, unlike political hyperbole and other protected speech, are not protected by the First Amendment."); *United States v. Hutson*, 843 F.2d 1232, 1235 (9th Cir. 1988) ("The 'intent to extort' requirement of section 876 guarantees that the statute reaches only extortionate speech, which is undoubtedly within the government's power to prohibit."). Extortion, like robbery or murder, refers to criminal conduct that has a commonly understood meaning providing ample notice of the conduct falling within its ambit, limiting the potential for abuse in enforcement, and ensuring that protected First Amendment speech is not within its reach. *See Jackson*, 180 F.3d at 69 (quoting Representative Hobbs in debates surrounding the enactment of the Hobbs Act as "stat[ing] that the terms extortion and robbery 'have been construed a thousand times by the courts. Everybody knows what they mean.'") (quoting 91 CONG. REC. 11,912 (1945)). While theoretically a statute criminalizing the making of threats in general could be unconstitutionally vague or overbroad, 18 U.S.C. § 875(d) is significantly more circumscribed: 18 U.S.C. § 875(d) requires both that the threat be wrongful and that it be made in conjunction with the specific intent to extort. *United States v. Cooper*, 523 F.2d 8, 10 (6th Cir. 1975) (recognizing that the "intent to extort" provision in 18 U.S.C. § 875(b) is a specific-intent requirement). This specific-intent element not only renders the statute less vague, *see United States v. Anderson*, 605 F.3d 404, 413

(6th Cir. 2010) ("the Court has recognized that a scienter requirement may mitigate a law's vagueness") (quoting *Vill. of Hoffman Estates*, 455 U.S. at 499), but also ensures that its application is sufficiently constrained to reach only nonprotected speech, *see Hutson*, 843 F.2d at 1235 ("Because the statute in the present case is limited to extortionate threats, it does not regulate speech relating to social or political conflict, where threats to engage in behavior that may be unlawful may nevertheless be part of the marketplace of ideas.").

In short, 18 U.S.C. § 875(d) is sufficiently cabined by its own wrongful threat and intent to extort requirements to survive constitutional muster.[17] We have no doubt that the statute is not unconstitutionally vague or overbroad as applied to Coss and Sippola. Moreover, Coss and Sippola have not convinced us of a real potential of the statute reaching a substantial amount of protected speech. Consequently, we affirm the district court's judgment denying defendants' constitutional challenges to 18 U.S.C. § 875(d).

## B. Sentencing

### 1. Standard of Review

Typically, we review for clear error a district court's determination that a defendant is not entitled to a downward adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. *United States v. Reaume*, 338 F.3d 577, 582 (6th Cir. 2003), *cert. denied*, 540 U.S. 1166 (2004). "However, if the only issue presented is the propriety of applying the reduction to the uncontested facts, the decision is reviewed de

---

[17]It is for this reason that the examples provided by defendants are inapposite. *See* Appellant Coss Br. at 37; Appellant Sippola Br. at 37-38. The first two examples, like the country-club example provided by the Second Circuit in *Jackson*, involve a valid claim of right, that has a legitimate nexus to the purported "threat" and, therefore, do not implicate wrongful threats under 18 U.S.C. § 875(d). Foreclosure of a mortgage and seizure of a house are a valid means by which a bank can enforce its right to collect mortgage payments from its defaulting mortgagees. Similarly, a judge has a legal right to place a delinquent father in jail for failure to pay ordered child support and so doing does not thereby relieve the father of his obligation to make those payments. The third example would properly qualify as extortion under the statute and because it is a "true threat" it is not protected speech. While a customer has every right to tell friends and neighbors that a restaurant is bad, just as a customer has a right to request that a restaurant provide his meal free of charge in light of poor service, it is the crime of extortion to threaten to injure the reputation of the restaurant in order to procure a free meal from the restaurant to which the customer was not otherwise entitled.

novo."  *Id.*  In this case, the parties dispute the appropriate standard of review.  The government maintains that the district court's determination was factual and therefore should be reviewed for clear error, while Coss and Sippola argue that de novo review is appropriate because "the only issue presented is the propriety of the application of the adjustment to uncontested facts."  Appellant Coss Br. at 42; Appellant Sippola Br. at 43.

In *Reaume*, this Circuit decided a similar dispute.  The defendant maintained that he was entitled to a downward adjustment, reviewed by the appellate court de novo, because at trial he had only "contested the applicability of the bank fraud statute to the conduct in which he participated."  *Reaume*, 338 F.3d at 583.  The government countered that clear-error review was appropriate given that *Reaume* had contested a significant factual issue at trial:  whether he had the specific intent to defraud required for the bank fraud conviction.  *Id.*  We held that because Reaume "elected to put the Government to its burden of proof at trial by denying" that he had the specific intent required for a conviction, which was an "essential factual element of guilt," we would review for clear error the district court's decision to deny a sentencing reduction for acceptance of responsibility.  *Id.*  In so holding, we acknowledged that while the question "[w]hether this intent is required under [the criminal statute] is a question of law," the question "whether [the defendant] actually harbored such an intent is a question of fact for the jury to decide."  *Id.*

This Circuit has recognized that the "intent to extort" is a specific-intent requirement in the context of a parallel provision of the statute—18 U.S.C. § 875(b).  *Cooper*, 523 F.2d at 10.  Although defendants now appear to contest on appeal the specific-intent requirement of 18 U.S.C. § 875(d), they requested that the jury be given a specific-intent instruction at trial.  *See* R. 84 (Summary of Authority for Defense Request for Specific Intent Instruction).  Defendants on appeal cannot reverse their position as to the intent requirement of the statute in the hopes of obtaining a more

favorable standard of review.[18]  Applying *Reaume*, we conclude that the district court's sentencing determination should be reviewed for clear error.

### 2.  Denial of Adjustment for Acceptance of Responsibility

At sentencing, the district court determined that a downward adjustment was not warranted and stated that its determination was "not a close question." R. 116 (Sent. Tr. at 21:4).  The district court noted that the defendants had consistently "denied an essential element of the case"—that they had the specific intent to extort Stamos—and had not "really" expressed any "remorse" or "guilt" apart from being "sorry" and "embarrassed" about the situation.  *Id.* at 21:11-12, 20-23.  The district court further stated:

> I think it is somewhat distressing that, even now, after going through this trial, they are basically still stonewalling it.  You know, the idea that this was somehow a legitimate business deal is, to put it mildly, somewhat ludicrous, based upon the facts in this case.  And it makes the Court wonder, that if they really thought that, would there be another attempt to do something like this again?

*Id.* at 59:3-10.

We cannot conclude that the district court's determination that a downward adjustment for acceptance of responsibility was not warranted constitutes clear error.  Although defendants did admit substantial elements of the crimes charged, they did not admit the requisite mens rea.  Defense counsel explicitly denied that Coss and Sippola had the "intent to extort" Stamos during opening statements at trial, and informed the jury that this factual contention would be the cornerstone of their defense.  R. 112 (Trial

---

[18]Defendants cite *United States v. DeAndino*, 958 F.2d 146 (6th Cir.), *cert. denied*, 505 U.S. 1206 (1992), in support of their assertion that 18 U.S.C. § 875 "creates a general and not a specific intent offense."  Appellant Coss Br. at 47; Appellant Sippola Br. at 48.  However, *DeAndino* dealt with a particular subsection of 18 U.S.C. § 875, subsection (c), which stated:  "Whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined not more than $1,000 or imprisoned not more than five years, or both." *DeAndino*, 958 F.2d at 147 (internal quotation marks omitted).  The subsection of 18 U.S.C. § 875 at issue here, subsection (d), clearly contains an intent requirement as it states:  "Whoever, *with intent to extort . . .* transmits in interstate or foreign commerce any communication containing any threat to injure the property or reputation of the addressee or of another . . . ."  Thus, 18 U.S.C. § 875(d) is analogous to 18 U.S.C. § 875(b), which also specifies the requirement of an "intent to extort" and which we concluded was a specific-intent offense.  *Cooper*, 523 F.2d at 10.

Tr. at 191:11-13) ("They had no intent to extort.  That's their defense, and that's what the evidence will show.").  Accordingly, the district court did not clearly err in denying the downward adjustment for acceptance of responsibility, and we affirm Coss's and Sippola's sentences.

### III.  CONCLUSION

Based on the foregoing, we AFFIRM the judgment of the district court.