NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0752n.06

Case No. 15-5160

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| Q.W., by his Next Friends and Parents, M.W. and K.T.W., | ) ) ) | **FILED** |
| | ) | Nov 17, 2015 |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| BOARD OF EDUCATION OF FAYETTE | ) | STATES DISTRICT COURT FOR |
| COUNTY, KENTUCKY; KENTUCKY | ) | THE EASTERN DISTRICT OF |
| DEPARTMENT OF EDUCATION; | ) | KENTUCKY |
| DIVISION OF EXCEPTIONAL CHILDREN | ) | |
| SERVICES; JOHNNY COLLETT, in his | ) | |
| Official Capacity as Director of Exceptional | ) | |
| Children Services, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

BEFORE: BOGGS, SUTTON, and COOK, Circuit Judges.

COOK, Circuit Judge. Q.W., a high-functioning autistic student in elementary school, through his Parents, appeals the district court's judgment affirming an administrative decision finding him ineligible for special education and related services under the Individuals with Disabilities Education Act ("Act"), 20 U.S.C. § 1400 *et seq*. The administrative board concluded that Q.W. was not statutorily disabled because his autism did not "adversely affect[] [his] educational performance." 34 C.F.R. § 300.8(c)(1)(i). The district court agreed, noting that although the Act left "educational performance" undefined, its ordinary meaning suggests

"*school-based* evaluation." On appeal, the Parents argue that "educational performance" includes not only academics but also social and psychological performance across all settings. For the following reasons, we affirm the district court's judgment.

I.

Q.W. was a student in California when he was identified as disabled under the Act and provided an individualized education plan ("IEP"). In August 2009, Q.W.'s family relocated to Lexington, Kentucky and enrolled him in the Fayette County School District. The District convened an Admission and Release Committee ("Committee"), which adopted Q.W.'s California IEP. The California IEP included speech, language, occupational, and behavioral therapy plus adaptive physical education. The Parents supplemented this plan with four hours of various private therapies per week.

Two years later, during a periodic re-evaluation of Q.W.'s continued eligibility, the Committee determined that because Q.W.'s condition did not adversely affect his "educational performance," he was no longer eligible for special education and related services under the Act. The Parents disagreed and requested an independent educational evaluation, as authorized by 34 C.F.R. § 300.502(b). The Committee continued to deem Q.W. ineligible despite the results of that evaluation.

A hearing challenging that determination convened about a year later and included testimony from: four psychologists, the Director of Special Education, the Related Services Advisor, Q.W.'s teachers, the school system diagnostician, a professor of school and counseling psychology, a biostatistics professor, two speech therapists, a speech pathologist, two nannies, four occupational therapists, the school guidance specialist, and Q.W.'s mother. The parties also presented a number of evaluations, examinations, and reports. The evidence pointed both ways

on Q.W.'s social development and whether he had completed his IEP. There was also a conflict of evidence regarding Q.W.'s behavior at home, which included self-injurious acts, and his generally good at-school behavior. The hearing officer concluded that Q.W.'s academic achievement made him ineligible for Act services. The Parents appealed to the Kentucky Exceptional Children Appeals Board (ECAB), which affirmed on the same grounds.

The Parents then appealed to the United States District Court for the Eastern District of Kentucky. That court affirmed the administrative decision, finding that in the absence of a statutory directive, the ordinary meaning of "educational performance suggests *school-based* evaluation." It held: "While 'educational performance' may be understood to extend beyond the four corners of a report card to include a student's classroom experience, it does not include the child's behavior at home. Social and behavioral deficits will be considered only insofar as they interfere with a student's education. Here they do not." The Parents appeal.

## II.

Neither party disputes that Q.W. has autism—they instead debate whether his condition qualifies him as a child with a disability under the Act. A "child with a disability" is "a child with . . . autism . . . or . . .[a] specific learning disabilit[y] . . . who, by reason thereof, needs special education and related services." 20 U.S.C. § 1401(3)(A). Autism is a learning disability "significantly affecting verbal and nonverbal communication and social interaction . . . that adversely affects a child's *educational performance*." 34 C.F.R. § 300.8(c)(1)(i); 707 Ky. Admin. Regs. 1:002, § 1(5) (emphasis added). "Educational performance" is left undefined. And though states are free to give substance to the term, *J.D. ex rel. J.D. v. Pawlet Sch. Dist.*, 224 F.3d 60, 66 (2d Cir. 2000), Kentucky has not.

The Parents say that "educational performance" includes a student's academic, social, and psychological needs. The Board agrees. Where they disagree is in the meaning of that term: the Parents focus on Q.W.'s problematic behavior at home, while the Board focuses on the psychological and social aspects of Q.W.'s makeup that affect his school performance.

III.

Giving fresh review to the term, *United States v. Coss*, 677 F.3d 278, 283 (6th Cir. 2012), we agree with the district court, the Board, and the Parents that "educational performance" may encompass more than academic achievement. By demanding that, absent a state-provided definition of the term, administrators "use a variety of assessment tools and strategies to gather relevant functional, developmental, and academic information" to determine eligibility, the Act contemplates a holistic evaluation. 20 U.S.C. § 1414(b)(2)(A). The Act stresses this point by eschewing "any single measure or assessment as the sole criterion for determining whether a child is a child with a disability . . . ." *Id.* § 1414(b)(2)(B).

Yet the Act and the corresponding Kentucky statute speak not at all about a child's behavior at home and in the community. Absent a contrary directive, a statutory term must be given its ordinary meaning. *See Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 252 (2004). As the district court correctly observed, the plain meaning of "educational performance" suggests school-based evaluation. This interpretation finds support in the Act's legislative purpose: to provide "a free appropriate public education." 20 U.S.C. § 1400(d)(1)(A).

The Parents' preferred reading has no limiting principle. Their position would require schools to address all behavior flowing from a child's disability, no matter how removed from the school day. We accordingly agree with the district court's judgment curtailing its review of

Q.W.'s educational performance to the classroom and school experience—to the exclusion of social or behavioral deficits that were not shown to interfere with his school-based performance.

IV.

The Parents also argue that the district court's decision was clearly erroneous in view of the evidence showing that Q.W. failed to reach the educational goals set by his IEP. They cite selectively to the record to support their assertion. For instance, although those who observed Q.W. at school—including the Director of Special Education, speech therapists, and multiple teachers—testified that Q.W. met his educational goals, the Parents point to isolated academic and social difficulties. Likewise, the Parents aim to discredit the Board's position by pressing his teachers' limited training with autistic students, and the unreliability of the evaluation data. But the hearing officer, the ECAB, and the district court reviewed all of this mixed evidence and nevertheless concluded that Q.W. enjoyed academic and other success at school.

Inconsistencies alone do not demonstrate clearly erroneous findings. "If the district court's account of the evidence is plausible in light of the record viewed in its entirety," we may not reverse. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985). Here, the district court considered the entire administrative record, which included Q.W.'s academic, social, and psychological experiences both at school and at home. This comprehensive evaluation demonstrated Q.W.'s academic success, an absence of significant social difficulties at school, and a disconnect between his school-based success and at-home problems.

The record supports the district court's conclusion, and we therefore AFFIRM.