NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0556n.06

No. 19-6152

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Sep 29, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiffs-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| MIKHY FARRERA-BROCHEZ | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF KENTUCKY |
| Defendant-Appellant. | ) | |
| | ) | |

Before: GUY, CLAY, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge.  Mikhy Farrera-Brochez began his crusade against the Singaporean Government over eight years ago.  It culminated in two threatening emails to Singaporean officials and three criminal convictions in the United States—two for extortion and one for misuse of the identification of others.  Farrera-Brochez argues that insufficient evidence supported his convictions and that his sentence was unreasonable.  We reject his arguments and affirm.

I.

In 2008, Farrera-Brochez moved to Singapore, where he lived with his husband, Dr. Ler Teck Siang. Dr. Ler worked for the Singaporean Ministry of Health and led its National Public Health Unit.  The Unit maintained an HIV registry that collected the names, birthdates, and other identifying information of any person diagnosed with HIV in Singapore.  The Ministry closely

guarded the information and used it primarily to control the spread of HIV. Only 11 employees had regular access to the database; Dr. Ler was one of them.

In 2012, Farrera-Brochez gained access to the registry, which then contained the information of over 14,000 persons with HIV. Farrera-Brochez thought the Singaporean "regime" was using the information for "nefarious reasons"—specifically, to discriminate against gay men like him and his husband. Over the course of four years, Farrera-Brochez contacted various Ministry officials, who purportedly denied the registry's existence. Farrera-Brochez also tried, without success, to shut down the database.

In 2016, Farrera-Brochez sent screenshots of the database to Singaporean government officials. They reported the matter to the police, who began investigating his possession of the registry information. Farrera-Brochez also sent a copy of the files to his mother in Kentucky and instructed her to download them, telling her that his request "meant life or death." Singaporean police soon raided his residence and seized his computer. Farrera-Brochez was arrested and convicted on several drug and fraud offenses, and sentenced to 28 months' imprisonment. His husband was convicted on different charges and was still serving his term when Farrera-Brochez was released in 2018.

Farrera-Brochez then moved to Kentucky, where he retrieved the HIV-registry files from his mother. He also contacted the Lexington Police, the FBI, the State Department, and Congress to complain about Singapore's registry and its "politically motivated" criminal prosecution of him.

Those complaints spurred no action, so Farrera-Brochez took matters into his own hands. In January 2019, Farrera-Brochez emailed the Singaporean Supreme Court and Prime Minister, an American diplomat stationed in Singapore, and a CNN reporter, among others. The email included three links that led to copies of the HIV database and its confidential personal information; two

links were not password-protected. In his email, Farrera-Brochez stated, "I demand that the Supreme Court reopen my case" and certain "information needs to be made available to the court and my husband's judge." He also asked whether "the courts [were] going to act and hold these two prosecutors in contempt of court[.]"

A month later, in February 2019, Farrera-Brochez sent a second email, again addressed to Singapore's Prime Minister and other government officials, as well as to a dozen Singaporean and American reporters. In this email, Ferrera-Brochez warned, "I will continue releasing . . . evidence" about the compromised database "until the [Singaporean] regime stops the HIV Registry and releases my husband Dr. Ler Teck Siang from the unlawful imprisonment based on false charges." The next day, Farrera-Brochez called the FBI and said, "They will never get [the breach] covered up without my cooperation . . . [which] depends on them releasing my husband, not touching his medical license, and giving me back my cats."

A federal grand jury thereafter indicted Farrera-Brochez on two counts of using interstate and foreign commerce to extort (one count for each email), in violation of 18 U.S.C. § 875(d), and one count of possessing and transferring personal identifying information through interstate and foreign commerce, in violation of 18 U.S.C. § 1028(a)(7).

The case later went to trial, where most of the facts were undisputed. Farrera-Brochez reiterated that his goal in sending the emails was "to get the case reopened and hopefully get these charges . . . overturned and [his] husband released from them." Dr. Vernon Lee, the director of communicable diseases at the Singaporean Ministry of Health, testified that Farrera-Brochez's actions forced the Ministry to issue a press release about the data breach and attempt to contact every person on the registry. Many of the persons reached, Dr. Lee testified, were "extremely

fearful" and "expressed a lot of anxiety" that their information might fall into the wrong hands. Some feared losing their jobs, and others became "depressed or were suicidal because of this."

After two days of testimony, a jury convicted Farrera-Brochez on all charges. The district court sentenced Farrera-Brochez to 24 months' imprisonment. This appeal followed.

## II.

## A.

Farrera-Brochez challenges the sufficiency of the evidence supporting each conviction. We must uphold his convictions if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

The parties agree, and we will assume, that extortion in violation of 18 U.S.C. § 875(d) has the following elements: first, that the defendant knowingly sent a communication in interstate or foreign commerce; second, that the communication contained a "wrongful" and "true" threat to injure the property or reputation of another; and third, that the defendant intended to extort something "of value." *See United States v. Coss*, 677 F.3d 278, 283-85 (6th Cir. 2012).

Farrera-Brochez concedes the first element—*i.e.*, that he knowingly sent the two emails from Kentucky in interstate or foreign commerce. As to the second element—whether Farrera-Brochez made a wrongful and true threat—Farrera-Brochez disputes only that his threats were "wrongful." A threat is "wrongful" if it has "no nexus to a claim of right." *Coss*, 677 F.3d at 286. Farrera-Brochez had no rightful claim to the things he demanded here, namely the release of his husband, the reopening of their criminal cases, and the return of his cats from the Singaporean government in exchange for his silence about the HIV registry and agreement not to publish its information. Nor was he legally entitled to possess the information on the registry.

Farrera-Brochez's threat to injure the Singaporean government's reputation by publicizing its registry information was therefore wrongful.

That leaves the third element, whether Farrera-Brochez intended to extort something "of value" by means of his threats. Farrera-Brochez says the government failed to prove this element because, he says, he acted for the greater public good rather than for any financial benefit to himself. But "value" is not measured in only dollars; it is enough that the thing demanded has subjective value to the person making the threat. *See United States v. Gorman*, 807 F.2d 1299, 1304-05 (6th Cir. 1986). Farrera-Brochez's demands had obvious subjective value to him, which meant the government presented sufficient proof of this element.

Farrera-Brochez likewise argues that the evidence did not support his conviction for the use of another person's identity to commit a felony. The identifying information at issue here was the personal information of the approximately 14,000 people on the registry. Farrera-Brochez disputes only that the government proved that he used this information with "the intent to commit, or to aid or abet, or in connection with, any unlawful activity that constitutes a violation of Federal law." 18 U.S.C. § 1028(a)(7). Specifically, he denies that he used this information with the intent to commit the crime of extortion. That argument is thus derivative of his arguments with respect to his extortion convictions, and fails for the same reasons. The evidence was therefore sufficient to support this conviction.

B.

Farrera-Brochez challenges his sentence. In considering that challenge, we review the district court's legal conclusions de novo, its factual findings for clear error, and the sentence's substantive reasonableness for an abuse of discretion. *United States v. Volkman*, 797 F.3d 377, 398-99 (6th Cir. 2015).

Farrera-Brochez argues that, in determining his guidelines range, the district court wrongly applied a "multiple-victims" enhancement. *See* USSG § 2B1.1(b)(2)(A)(i). Specifically, Farrera-Brochez maintains that none of the 14,000 people on the HIV registry were "victims" because, he says, they did not suffer economic or physical harm. But Farrera-Brochez overlooks Application Note 4(E) to § 2B1.1(b)(2), which provides that, in cases (like this one) "involving means of identification," a victim can be "any individual whose means of identification was used unlawfully or without authority." That definition comprises the 14,000 people whose identifying information Farrera-Brochez used to commit the crime of extortion. The evidence therefore supported this enhancement.

Farrera-Brochez finally argues that his sentence was substantively unreasonable. Although Farrera-Brochez's guidelines range was 6 to 12 months' imprisonment, the district court imposed a sentence of 24 months. A district court is well within its discretion "to vary from the advisory Guidelines" when the sentencing judge finds that the case falls "outside the 'heartland'" or "mine-run" of cases "to which the Commission intends individual Guidelines to apply.'" *Kimbrough v. United States*, 552 U.S. 85, 109 (2007) (quoting *Rita v. United States*, 551 U.S. 338, 351 (2007)). This case is far removed from the mine-run of extortion and identity theft cases. As the court observed, Farrera-Brochez's guidelines range was "not sufficient to reflect the harm to the victims, the type of harm that has occurred to these individuals," and the "great number of individuals that are victims as defined by the guidelines." The district court thus found Farrera-Brochez's range was "woefully inadequate" and that a sentence of 24 months of imprisonment was therefore "absolutely necessary to meet all of the statutory factors" recited in 18 U.S.C. § 3553(a), including "the seriousness of the offense," "the defendant's history and his

characteristics, lack of remorse, and his willingness to harm any person that . . . would disagree with him." Suffice it to say that the district court did not abuse its discretion.

The district court's judgment is affirmed.