**UNITED STATES of America, Plaintiff–Appellee,**

v.

**David L. HOGLUND, Defendant–Appellant.**

No. 97–6167.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 5, 1998.

Decided May 18, 1999.

---

Stephen B. Shankman (argued), Doris A. Randle–Holt (briefed), Office of the Federal Public Defender for the Western District of Tennessee, Memphis, Tennessee, for Defendant–Appellant.

Carroll L. Andre, III, Assistant U.S. Attorney (argued and briefed), Memphis, Tennessee, for Plaintiff–Appellee.

Before: JONES, RYAN, and BATCHELDER, Circuit Judges.

## OPINION

RYAN, Circuit Judge.

David L. Hoglund appeals from his conviction and sentence for bank fraud, in violation of 18 U.S.C. § 1344. Hoglund is an attorney who settled his clients' cases without their permission, forged their signatures on the settlement checks, and deposited the money into his own account. As part of his sentence, Hoglund was ordered to pay $48,333.34 in restitution to his victims. His appeal raises two issues: whether the district court erred (1) when it failed to instruct the jury that the government must prove that Hoglund's conduct created a risk of loss for the bank; and (2) when it did not deduct from the restitution amount the one-third contingent attorney fee pursuant to Hoglund's contract with his clients. We hold that the district court committed no error, and therefore, we affirm the conviction and sentence.

### I.

On April 9, 1997, a jury found Hoglund guilty of five counts of bank fraud. The general scheme underlying the five counts was as follows: Hoglund filed personal injury lawsuits on behalf of at least three different clients. In each case, Hoglund and the client executed a contingency fee

agreement, whereby Hoglund would receive one-third of any money the client received, whether by settlement or verdict. Hoglund agreed with the defendant in each case to settle the claim without first asking for the client's permission. If his client asked him about the case, Hoglund would represent that the case was still pending. When Hoglund received a settlement check, which was payable to both Hoglund and the client, he forged his client's signature, and deposited the check into his own account at one of two banks, First Tennessee Bank or National Bank of Commerce.

The settlement amounts were as follows: $39,000 settlement for Thurman DeShazer; $4,000 for Edward Yarbrough; and three settlements for Marty Neese of, $3,500, $2,000, and $2,500. When Neese discovered the scam, she turned to the bank to recover her money, but she demanded only two-thirds of each settlement amount, apparently conceding to Hoglund the one-third contingency fee he would have received if the cases had been settled with Neese's permission.

At the close of Hoglund's trial, the court and the attorneys discussed the court's instructions to the jury. At one point, Hoglund requested an instruction that in order to convict, the jury must find that the bank in question must have been placed at a "risk of loss." However, out of the jurors' hearing, the court stated that with regard to the defendant's intent, it is "sufficient that the government establishes that the defendant intended to cause actual or potential loss of the financial institution." The court then stated: "I think that's the way the risk of loss appropriately fits into the case. Is there any objection to that?" Defense counsel replied, "None from the defense."

During the actual charge to the jury, the court stated that it is not necessary for the government to prove that anyone lost money. It said: "In this connection it is sufficient if the government establishes that the defendant intended to cause actual or potential loss to the financial institution." The defendant now claims this instruction was error. We address this issue below.

At the sentencing hearing, the defendant objected to having the full amount of the settlement checks included in the amount of restitution. He argued that the one-third contingency fee his clients agreed to pay him should be deducted from the amount he is required to pay. The district court disagreed, stating:

> I don't think under these circumstances that one can subtract the one-third, and the reason is because whatever agreement Mr. Hoglund had with his client for him to receive a fee, surely didn't contemplate that he would receive that fee as a result of settling the case without their authorization. So I think we have to say that the fee agreement doesn't govern this issue because there hasn't been any compliance with the fee agreement on the part of Mr. Hoglund.

This appeal followed.

## II.

### A.

We must first decide whether the district court's jury instruction regarding the requisite intent to defraud was error. We review a jury instruction to determine "whether the charge, taken as a whole, fairly and adequately submits the issues and applicable law to the jury." *United States v. Martin*, 740 F.2d 1352, 1361 (6th Cir.1984). However, in this case, the defendant did not object to the jury instructions; therefore, we review the instructions for plain error. *See United States v. Rogers*, 118 F.3d 466, 471 (6th Cir.1997). We have discretion to act upon plain error when we find an error that affected the substantial rights of a party and conclude that a manifest miscarriage of justice would result if the error were not corrected. *See id.* at 471–72.

The three elements required for a conviction for bank fraud under section

1344(1) are: (1) that the defendant knowingly executed or attempted to execute a scheme to defraud a financial institution; (2) that the defendant did so with the intent to defraud; and (3) that the financial institution was insured by the FDIC. *See, e.g., United States v. Brandon,* 17 F.3d 409, 424–25 (1st Cir.1994).

■ The question here is whether the government must also prove that defendant exposed a bank to a risk of loss as part of the "scheme to defraud" element.

This is an issue of first impression for this court. The Second Circuit, in *United States v. Jacobs,* 117 F.3d 82 (2d Cir.1997), stated that "[o]ne element required for a conviction of bank fraud is actual loss or exposure to 'risk of loss.' " *Id.* at 91 (citations omitted). Similarly, the Fifth Circuit, in *United States v. Lemons,* 941 F.2d 309 (5th Cir.1991), stated that "the government had to prove only that at least one of the banks was at risk, not that an actual loss was incurred." *Id.* at 315–16. The inference from *Lemons* is that, while proof of an actual loss is not required, proof of a risk of loss is.

The Ninth Circuit, in *United States v. Wolfswinkel,* 44 F.3d 782 (9th Cir.1995), discussed the issue in more detail without deciding the point. There, the district court *did* instruct the jury, pursuant to the defendant's request, that the prosecution was required to show that the defendant's fraud scheme placed at least one bank at a risk of loss. *See id.* at 785. The government contended on appeal that risk of loss is not an essential element of the crime, but rather, is only one of several possible ways of proving the defendant's intent to defraud. *See id.* at 785–86. The Ninth Circuit observed that "[t]he Courts of Appeals that have adopted a 'risk of loss' analysis have not made clear whether its proof is necessary or merely sufficient to show intent." *Id.* at 786 (citations omitted). After stating that the Ninth Circuit had never adopted a risk of loss analysis in bank fraud cases, the *Wolfswinkel* court decided not to address the question of whether exposing a bank to a risk of loss is necessary because, in that particular case, there was sufficient evidence that the defendant did put at least one bank at a risk of loss. *See id.* at 786.

We believe that "risk of loss" is merely one way of establishing intent to defraud in bank fraud cases. Accordingly, we agree with the district court that a defendant need not have exposed a bank to a risk of loss as an element of bank fraud. Instead, the district court's instruction, stating that the defendant must have intended to put a bank at a risk of loss, was sufficient to support a conviction for bank fraud. Accordingly, we hold that the district court did not err when it refused to instruct the jury that the government must prove that the defendant exposed the banks to a risk of loss.

**B.**

At sentencing Hoglund was ordered to pay restitution as follows: $39,000 to De-Shazer, $4,000 to Yarbrough, $3,666.67 to First Tennessee Bank, and $1,666.67 to National Bank of Commerce, totaling $48,-333.34. The first two figures represent the full amount of the settlements and the latter two represent two-thirds of the settlement checks, based on the amount Neese collected from the banks.

■ A restitution order pursuant to the Victim and Witness Protection Act (VWPA), 18 U.S.C. §§ 3663–3664, is subject to a bifurcated review by this court. We review *de novo* whether restitution is permitted under the law and if we conclude that it is, we then review the amount ordered under an abuse of discretion standard. *See United States v. Guardino,* 972 F.2d 682, 686 (6th Cir.1992).

■ Hoglund is appealing the amount of the restitution ordered, claiming that his one-third contingency fee in the DeShazer and Yarbrough cases should be deducted from the total amount of restitution ordered. Hoglund argues that the amount

of restitution ordered can be no more than the amount of the loss incurred by the victims, not the amount the defendant received from his criminal activity.

 The government has the burden of establishing the amount of loss to the victims. *See United States v. Hart,* 70 F.3d 854, 863 (6th Cir.1995). Hoglund argues that the government has not met its burden because it has not established that his clients lost any money at all. In other words, the government did not establish that the clients would have refused the settlement. Arguably, if DeShazer and Yarbrough would have accepted the amounts for which Hoglund settled their cases, the amount they would have been out of pocket is the amount of the settlements minus the one-third contingency fee to which Hoglund would have been entitled. And therefore, Hoglund argues, that is the amount of their loss for which he may be held accountable.

We disagree. Hoglund's argument fails to account for the fact that a settlement sum does not belong jointly to the attorney and the client. The settlement or jury verdict for the plaintiff's claim belongs to the plaintiff alone. While it is a common business practice to make settlement or judgment satisfaction checks payable to both the attorney and the plaintiff/client, that does not mean that the funds represented by the check are the joint property of the attorney and the client or that they are co-owners of the instrument's value. Settlement checks are handled in such a manner primarily as a convenience and for the protection of the drawer. In each instance in this case, the amount of the settlement was wholly the property of the client. Each of the clients may indeed have a separate contractual obligation to pay Hoglund a sum equal to one-third of the settlement amount as a fee for his services. And the clients may have other contractual obligations related to the litigation as well; but such obligations, Hoglund's fee included, do not diminish the clients' entitlement to the full settlement amount. If Hoglund is to receive the one-third contingency fee arrangement to which he claims entitlement, he must enforce his contract, and he is free to attempt to do so. We express no opinion concerning his prospects for success.

The actual loss suffered by Hoglund's clients is at least as much as the settlement offers. Conceivably, the amount could be much higher if the government had proven that the cases actually had a greater settlement value. Accordingly, we conclude that the district court did not err in calculating the restitution.

### III.

For all of the reasons above, we **AFFIRM** the district court's judgment and sentence.