*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0254P (6th Cir.)
File Name: 03a0254p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

*v.*

    No. 02-1112

SCOTT A. REAUME,
    *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 97-81475—Gerald E. Rosen, District Judge.

Argued: June 20, 2003

Decided and Filed: July 28, 2003

Before: KENNEDY and COLE, Circuit Judges;
WILLIAMS, Senior District Judge.[*]

─────────────

## COUNSEL

**ARGUED:** Richard B. Ginsberg, Ann Arbor, Michigan, for
Appellant. Stephen L. Hiyama, ASSISTANT UNITED

─────────────

[*]The Honorable Glen M. Williams, Senior United States District
Judge for the Western District of Virginia, sitting by designation.

STATES ATTORNEY, Detroit, Michigan, for Appellee.
**ON BRIEF:** Richard B. Ginsberg, Ann Arbor, Michigan, for
Appellant. Stephen L. Hiyama, ASSISTANT UNITED
STATES ATTORNEY, Detroit, Michigan, for Appellee.

─────────────

## OPINION

─────────────

R. GUY COLE, JR., Circuit Judge. Defendant-Appellant
Scott A. Reaume was convicted by a jury of committing bank
fraud, in violation of 18 U.S.C. § 1344. Reaume admits to
opening several checking accounts at a federally insured
financial institution, making an initial deposit of a small sum,
writing checks from these accounts for goods and services
throughout the country with the knowledge that the accounts
did not contain sufficient funds to cover the value of the
checks, and returning the majority of the items purchased by
check to branches of stores in different locations in exchange
for cash.

After proceeding to trial on the theory that his scheme was
not intended to defraud a federally insured financial
institution, Reaume was found guilty by a jury. The final
judgment of conviction and sentence was entered on
January 3, 2002, and this timely appeal followed.

For the reasons that follow, we **AFFIRM** the judgment of
the district court.

### I.

On August 19, 1999, a federal grand jury returned a
one-count indictment charging Reaume with bank fraud. The
indictment alleged that Reaume knowingly executed a scheme
to defraud Monroe Bank and Trust ("the Bank").

Reaume's jury trial began on August 14, 2001. At trial,
testimony was presented that Reaume opened two checking

accounts at the Bank using the aliases Steven D. McIlveen and Robert Sandor. Accounts also were opened at the Bank by Adam Rodriguez and Danny K. Drummond in their own names. Drummond opened an additional account under the alias of John S. Woods.

Reaume, Rodriguez, and Drummond used checks drawn from their accounts to purchase merchandise at various branches of national-chain retailers, and subsequently returned most of the merchandise for cash refunds at other branches of the stores. The Bank flagged the five accounts early on and refused to honor the checks for which there were insufficient funds ("NSF checks"). The losses resulting from the passing of these NSF checks, therefore, fell on either the retailers themselves or the check-guarantee companies that insured the retailers.

On August 16, 2001, the jury returned a guilty verdict. On January 3, 2002, the district court determined that Reaume's guideline range was twenty-seven to thirty-three months, sentenced Reaume to thirty months of imprisonment and four years of supervised release, and ordered him to pay restitution in the amount of $95,649.26.

On appeal, Reaume raises four points of error. First, he argues that the evidence presented at trial was insufficient to maintain a conviction under the federal bank fraud statute because there was no evidence that he intended to defraud the bank itself, as opposed to the individual merchants or their respective insurance companies. Second, Reaume contends that the district court erred in refusing to award him a two-point reduction in offense level for acceptance of responsibility. Third, he asserts that the district court erred in overruling his objections at sentencing to the amount of money at issue in the fraud. Fourth, Reaume argues that the district court erred in ordering him to pay restitution in excess of $95,000 without considering his ability to pay.

## II.

### A. Sufficiency of the Evidence and Intent to Defraud

Reaume argues that there was insufficient evidence to find that he specifically intended to defraud the Bank, as opposed to the merchants or their insurers. He contends that an intent to defraud the payee of an NSF check does not provide a basis for a finding that there was an intent to subject the issuing bank to a loss. Accordingly, Reaume argues that the district court erred in denying his motion for a judgment of acquittal. The denial of a motion for a judgment of acquittal is reviewed de novo. *United States v. Kone*, 307 F.3d 430, 433 (6th Cir. 2002).

Three elements are required for a conviction of bank fraud pursuant to § 1344: (1) the defendant must have knowingly executed or attempted to execute a scheme to defraud a financial institution; (2) the defendant must have done so with the intent to defraud; and (3) the financial institution must have been insured by the Federal Deposit Insurance Corporation. *United States v. Everett*, 270 F.3d 986, 989 (6th Cir. 2001).

This Court previously addressed the intent element of the bank fraud statute in *United States v. Hoglund*, 178 F.3d 410 (6th Cir. 1999), and *Everett*. While neither of these cases are directly controlling, their explication here is critical because it is from these cases that we distill the principle which we apply to the present case.

In *Hoglund*, an attorney was convicted under § 1344 after settling his clients' cases without their permission, forging their signatures on the settlement checks he received, and depositing the money into his own account. 178 F.3d at 411. In *Hoglund*, we addressed the issue of whether the Government must prove that the defendant exposed a bank to a risk of loss as part of the "scheme to defraud" element. *Id.* at 413. *Hoglund* resolved this question by holding that "risk

of loss" is simply "one way of establishing intent to defraud in bank cases." *Id.* Thus, this Court found that a defendant need not have exposed a bank to a risk of loss as an element of bank fraud. *Id.* Instead, proof that the defendant "intended to put a bank at a risk of loss" was sufficient to maintain a bank fraud conviction. *Id.* Thus, *Hoglund* held that the bank fraud statute is violated, even when there is no actual risk of loss on the part of the bank, if the defendant's intent is to expose the bank to such a risk. While informative, *Hoglund* is not controlling in the present case. Here, in contrast to *Hoglund*, the defendant claims that, regardless of whether there was an actual risk of loss, there was no intent to expose the Bank to a risk of loss.

In *Everett*, the defendant, a certified public accountant, was found guilty of bank fraud by a jury. 270 F.3d at 989. On appeal, the defendant argued that the Government failed to prove the specific intent required by § 1344, namely, the intent to defraud a federally insured bank, or at least to put the bank at a risk of loss. *Id.* at 990. The defendant acknowledged that there was evidence that she intended to defraud her client, but argued that the manner in which she defrauded her client did not impose a risk of loss on the bank in question. *Id.* In affirming the conviction, we held that the specific intent required for bank fraud does not require putting the bank at a risk of a loss or intending to do so "in the usual sense." *Id.* at 991. "It is sufficient if the defendant in the course of committing fraud on *someone* causes a federally insured bank to transfer funds under its possession and control." *Id.* *Everett*, therefore, can be said to stand for the proposition that the bank fraud statute is violated, even if the intended victim of the fraudulent activity is an entity other than a federally insured financial institution, when the fraudulent activity causes the bank to transfer funds. Thus, the holding of *Everett* is also instructive but not squarely on point, as there was no evidence in the present case indicating that the Bank actually did transfer funds in connection with Reaume's fraudulent activities.

Unlike the defendant in *Hoglund*, Reaume contends that he harbored no intent to expose the financial institution to a risk of loss. Moreover, unlike the situation in *Everett*, Reaume contends, and the evidence substantiates, that the Bank never transferred any funds in connection with the fraudulent activity. Thus, it appears that Reaume's particular fact pattern does not fall neatly under the *Hoglund* or *Everett* rubric, which consider both the intended victim and actual loss.

We nevertheless affirm Reaume's conviction. The specific issue that Reaume appeals is the evidence of his intent to defraud the Bank itself. In *Everett*, this Court held that an intent to put the financial institution at a risk of loss is not required, and that the fact that the defendant defrauded someone was sufficient, given that the fraud caused the bank to transfer funds. 270 F.3d at 991. In the present case, the Bank was clearly at a risk of loss. Evidence was presented at trial to demonstrate that, when the Bank receives an NSF check, it makes a decision to either honor the check anyway or to dishonor the check. If the check is dishonored, the Bank does not lose any money, but if the check is honored, and the account holder fails to pay back that debt to the Bank, the Bank suffers a loss. Therefore, it is clear that Reaume's fraudulent activity, regardless of the intended victim, could have caused the Bank to transfer funds. If in fact the Bank had transferred funds, then this case would clearly be governed by *Everett*, because an intent to defraud someone would have caused the Bank to transfer funds. The issue of Reaume's intent simply cannot logically turn on the course of action chosen by the Bank after receiving the NSF checks. Accordingly, it is a necessary extension of *Everett* to find the intent element of § 1344 satisfied in this case.

*Everett* contains language to support this outcome. In *Everett*, this Court stated that the Government is probably better advised to proceed under the wire or mail fraud statutes where the bank has "minimal involvement, such as where a swindler deceives someone into voluntarily writing checks to the swindler on a good account." *Id.* Nevertheless, the Court

indicated that even such a minimal involvement of the bank is sufficient to find liability under § 1344 when the specific intent to defraud someone is present. *Id.* Therefore, we need not address the question of whether the evidence presented at trial was sufficient for a reasonable jury to find that Reaume intended to defraud the Bank specifically. Applying the reasoning of *Hoglund* and *Everett*, we find that intent to defraud the federally insured institution itself is satisfied where: (1) the intent to defraud some entity was present; and (2) that intended fraud placed a federally insured financial institution at a risk of loss.

In providing the jury with instructions at the close of trial, the district court stated that the Government not only needed to prove that Reaume knowingly executed or participated in a scheme to defraud a federally insured financial institution, but also that Reaume "did so with the intent to defraud Monroe Bank & Trust." The district court later stated that "the Government must prove beyond a reasonable doubt that the scheme to defraud was employed by the defendant to defraud Monroe Bank & Trust." Given our holding in *Everett* that the intent to have a bank be the victim of the fraudulent conduct is not a prerequisite to maintaining a conviction under the bank fraud statute, the jury instructions given by the district court benefitted Reaume.[1] In light of *Everett*, therefore, Reaume's argument that the evidence presented at trial was insufficient to demonstrate the intent required by the bank fraud statute fails.

## B. Sentence Reduction for Acceptance of Responsibility

Reaume appeals the decision of the district court refusing to grant him a two-point reduction in his offense level for acceptance of responsibility. Because such a finding generally presents a question of fact, this Court reviews a

---

[1]It should be noted that *Everett* was decided on October 12, 2001, and Reaume's trial concluded on August 16, 2001.

district court's finding that a defendant is not entitled to a sentencing reduction for acceptance of responsibility for clear error. *United States v. Childers*, 86 F.3d 562, 563 (6th Cir. 1996). However, if the only issue presented is the propriety of applying the reduction to the uncontested facts, the decision is reviewed de novo. *United States v. Tilford*, 224 F.3d 865, 867 (6th Cir. 2000).

The United States Sentencing Guidelines (the "Guidelines") provide that a two-point reduction in offense level is applicable where the defendant clearly demonstrates acceptance of responsibility for his offense. U.S. SENTENCING GUIDELINES MANUAL § 3E1.1. While a guilty plea is ordinarily a prerequisite for this reduction, Application Note 2 of this provision states that conviction by trial does not automatically exclude a defendant from consideration for this reduction. U.S. SENTENCING GUIDELINES MANUAL § 3E1.1, comment. 2. The Guidelines provide that, under rare circumstances, a defendant may clearly demonstrate an acceptance of responsibility despite exercising his constitutional right to trial. *Id.* For instance, where a defendant goes to trial to assert issues that do not relate to factual guilt, such as a challenge to the applicability of a statute to his conduct, a reduction may be warranted. *Id.* Even in such an instance, however, "a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct." *Id.*

Reaume's position is that he did not contest the Government's factual allegations at trial, but rather, merely contested the applicability of the bank fraud statute to the conduct in which he participated. In contrast, the Government maintains that Reaume did in fact contest the issue of whether he participated in the scheme with an intent to defraud the Bank. According to the Government, Reaume's specific intent to defraud the Bank is a factual matter.

We agree with the Government. At the time of Reaume's trial, the district court and the parties accepted that the Government's burden included demonstrating that Reaume intended to place the Bank at a risk of loss. Whether this intent is required under § 1344 is a question of law, but whether Reaume actually harbored such an intent is a question of fact for the jury to decide. Reaume elected to put the Government to its burden of proof at trial by denying what was understood to be an essential factual element of guilt. Accordingly, the refusal of the district court to award Reaume a reduction for acceptance of responsibility was not clear error.

### C. Amount of Loss

Reaume argues that the district court erred by scoring his Guidelines range based on a finding that the relevant conduct contributed to between $200,000 and $350,000 in losses. This Court will only set aside a district court's factual finding with regard to the amount of loss attributed to a defendant under Guidelines § 2F1.1(b) if it concludes that the district court's finding of fact was clearly erroneous.[2] *United States v. Ware*, 282 F.3d 902, 907 (6th Cir. 2002).

In its first sentencing memorandum, the Government attributed $211,193.99 in losses to Reaume, comprising the following sums: (1) $108,328.37 for the losses caused by Reaume, Rodriguez, and Drummond through the use of NSF checks from the Bank; (2) $92,000.00 for the losses caused by the use of NSF checks by Jamie Reaume, the defendant's

---

[2]Guideline § 2F1.1 has been repealed and replaced by the consolidated property-crime provisions in § 2B1.1. Section 2F1.1 was repealed prior to Reaume's sentencing. Nevertheless, due to ex post facto concerns that arise as a result of the harsher penalties contained in § 2B1.1, the probation officer was correct to use the version of the fraud guideline, § 2F1.1, in effect when Reaume's offense occurred. *See* U.S. SENTENCING GUIDELINES MANUAL § 1B1.11(b)(1).

younger brother; and (3) $10,865.62 for the losses caused by Pamela Reaume, the defendant's sister.

At the sentencing hearing, the district court expressed concern about attributing to Reaume the losses caused by his siblings. Accordingly, the district court decided not to impose a sentence until it had the opportunity to hear testimony from the two siblings and make a determination as to whether their conduct was connected to Reaume's conduct in a manner that was sufficient to satisfy the relevant conduct criteria for sentencing purposes.

In its second sentencing memorandum, the Government abandoned its position that the activity of Reaume's siblings should be attributed to Reaume and instead argued that the additional relevant conduct for which Reaume should be held responsible involved Reaume's own fraudulent conduct beyond that charged in the indictment. According to the Government, Reaume opened numerous fraudulent checking accounts at other financial institutions throughout the country. The evidence of this activity consisted of: (1) Reaume's 1991 arrest in Illinois for attempting to purchase clothing with a bad check; (2) Reaume's admission, subsequent to the 1991 arrest, that he had made as much as $70,000 per year through his NSF-checking scheme; (3) Adam Rodriguez's testimony that he and Reaume had been traveling the country writing bad checks for about three years, obtaining thousands of dollars a month by doing so; (4) numerous canceled checks obtained by the FBI; (5) a number of fake identification cards possessed by Reaume; (6) Reaume's 1993 arrest in Florida for passing bad checks; and (7) the absence of any record of legitimate employment. The district court accepted the Government's rationale and found Reaume to be responsible for between $200,000 and $350,000 in losses.

Reaume contends that this finding was in error for two reasons. First, Reaume argues that the district court erred by allowing the Government to change its theory on which the amount of loss was based without providing him with

adequate notice. Second, Reaume maintains that even if the district court had ruled properly in permitting the Government to advance its new theory, the basis for holding Reaume responsible for more than $200,000 in losses was too speculative in nature to satisfy the Government's burden of proving Reaume's responsibility for that sum by a preponderance of the evidence.

Reaume's contention that the district court erred in permitting the Government to change theories between sentencing hearings is without merit. The rationale on which the amount of losses was calculated was perfectly reasonable, and Reaume received notice of this change in position when a copy of the Government's second sentencing memorandum was sent to him. There was no error in the district court's decision to permit the Government to proceed on its new theory regarding relevant conduct.

Similarly, Reaume's argument that the district court erred in finding him responsible for over $200,000 in losses is also without merit. The district court's findings with respect to relevant conduct are only disturbed if clearly erroneous, *United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir. 1996), and need only be based on the preponderance of the evidence, *United States v. Meacham*, 27 F.3d 214, 216 (6th Cir. 1994). The evidence brought forth by the Government to substantiate the relevant conduct is sufficient to support the district court's findings.

### D. Order of Restitution

The district court ordered Reaume to pay restitution in the amount of $95,649.26. Reaume was ordered to "pay any restitution obligations still outstanding according to a monthly schedule recommended by the probation department and approved by [the district] court." Reaume argues that the district court erred in imposing this amount of restitution without considering his ability to pay.

This Court reviews de novo whether a restitution order is permitted under the law. *United States v. Dunigan*, 163 F.3d 979, 981 (6th Cir. 1999). Generally, if the restitution order is legally permissible, the amount ordered is then reviewed for an abuse of discretion. *Id.* However, here, because Reaume did not object to the restitution order at his sentencing, the sentencing decision is reviewed for plain error. *See United States v. Koeberlein*, 161 F.3d 946, 949 (6th Cir. 1998). To establish plain error, a defendant must show: (1) that an error occurred in the district court; (2) that the error was plain, i.e., obvious or clear; (3) that the error affected substantial rights of the defendant; and (4) that this adverse impact seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *Id.*

The parties agree that a restitution order here is legally permissible pursuant to the Victim and Witness Protection Act ("VWPA"). 18 U.S.C. § 3663. Accordingly, the only issue before this Court with regard to the restitution order is whether the district court committed plain error in ordering restitution in the amount of $95,649.26.

At Reaume's sentencing, the district court made no reference to Reaume's ability to pay the restitution order in full. In determining the amount of restitution that should be ordered, a sentencing court is required to consider the factors listed in 18 U.S.C. § 3664(a). *Dunigan*, 163 F.3d at 981. The § 3664(a) factors include the economic circumstances of the defendant. The Government argues that all of the information relevant to the restitution order was contained in the Presentence Investigation Report.

While it is true that "a district court must have, at a minimum, some indication that a defendant will be able to pay the amount of restitution ordered in order to comply with 18 U.S.C. § 3664(a)," *Dunigan,* 163 F.3d at 982, this Court has also held that "[s]pecific findings in the imposition of restitution are not required." *United States v. Jackson-Randolph*, 282 F.3d 369, 386 (6th Cir. 2002). Given

the findings in the Presentence Investigation Report that Reaume has an Associate Degree in Applied Science, lives with his parents when in the United States, and has only a very small amount of debt, the amount of restitution ordered by the district court is not clear error. Moreover, the district court did not order that the restitution be paid during any particular period of time.

A restitution order is permissible even if the defendant lacks the present ability to pay. *United States v. Faasse*, 265 F.3d 475, 494 (6th Cir. 2001) (en banc). The burden is on the defendant to demonstrate that a restitution order far exceeds his resources and earning potential, *United States v. Adams*, 214 F.3d 724, 730 (6th Cir. 2000), and Reaume has not met this burden here. While it may have been preferable for the district court to have engaged in a more explicit analysis of Reaume's ability to pay this restitution amount, it cannot be said that the failure to do so in this instance meets the requirements of the plain error standard.

### III.

For the foregoing reasons, we **AFFIRM** the judgment of the district court.