**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0557n.06

**No. 11-4000**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*May 30, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| IMAD M. EL SAYED, | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

**Before: COOK and STRANCH, Circuit Judges; LAWSON District Judge.**[*]

**JANE B. STRANCH, Circuit Judge**. After two decades in the United States, Imad El Sayed successfully applied for citizenship. On the day of his naturalization ceremony, he falsely indicated on a form that he had not been arrested since his application interview, and later repeated this denial to an immigration officer. At trial, a jury convicted El Sayed of unlawful procurement of citizenship and making false statements to a federal agent despite his defense that he had misunderstood the questions and did not knowingly mislead the government. El Sayed appeals his conviction and sentence, arguing (1) the evidence was insufficient to support a conviction and (2) he should have received a sentencing reduction for acceptance of responsibility. Finding no error, we **AFFIRM**.

---

[*]The Honorable David M. Lawson, United States District Judge for the Eastern District of Michigan, sitting by designation.

## I. BACKGROUND

Other than El Sayed's state of mind at the time he gave the false statements in question, the facts of this case are not in dispute. In 1988, El Sayed came to the United States from Lebanon as a student and became a permanent resident two years later. In September 2008, he submitted Form N-400 to apply for citizenship and had a follow-up interview in January 2009. During that process, El Sayed was advised by an immigration official and his attorney that it was necessary to disclose offenses for which he had been arrested but not convicted, and properly disclosed such an offense. Shortly after the interview, El Sayed was arrested for Gross Sexual Imposition, a felony, in February 2009 and Sexual Imposition, a misdemeanor, in March. He was indicted for both offenses in April.

In September 2009, El Sayed received a packet in the mail informing him of his approval for citizenship and that he would be able to take an oath of citizenship at a naturalization ceremony later that month. The packet included Form N-445, which instructed him to answer the questions on the form on the day of his naturalization and to bring the completed questionnaire with him to the ceremony. The form stated in relevant part:

> AFTER the date you were first interviewed on your Application for Naturalization, Form N-400:
>
> . . .
>
> 4. Have you been arrested, cited, charged, indicted, convicted, fined or imprisoned for breaking or violating any law or ordinance, including traffic violations?

Just prior to taking his oath, El Sayed responded to this question by checking the box indicating "No" even though his two criminal charges remained pending. Those charges were adjudicated in February 2010 when he pled guilty solely to the misdemeanor offense under a plea agreement.

Around that time, ICE Agent Mark Bodo was asked to perform an immigration check on El Sayed by a local police department to verify his immigration status. After comparing the dates of the charges to El Sayed's naturalization, he began an investigation which eventually led to the discovery that El Sayed had failed to disclose his recent arrests on Form N-445.

Based upon these findings, Agent Bodo expanded his investigation by conducting a "ruse interview" in September 2010 in which he spoke with El Sayed at his house without disclosing the true purpose of the visit. During this interview, which Agent Bodo surreptitiously recorded, Bodo reviewed the Form N-445 questions. El Sayed again answered "No" to Question 4. Although Agent Bodo offered El Sayed the opportunity to use a translator, the entire interview was conducted in English. In December 2010, Agent Bodo and a police officer went to El Sayed's house and confronted him directly with the false statement. During this interview, which was also recorded, El Sayed acknowledged he had been arrested between the times he submitted Forms N-400 and N-445. According to Agent Bodo, El Sayed "had trouble coming up with one single answer" to explain why he had not disclosed these arrests earlier.

The day after the second interview, El Sayed was indicted for unlawful procurement of citizenship based on denying his arrest on the naturalization form, in violation of 18 U.S.C. § 1425(a), and for making a materially false statement to a federal agent based on denying his arrest to Agent Bodo during the first interview, in violation of 18 U.S.C. § 1001. At trial, El Sayed's defense was generally that he did not knowingly make any false statements because, due to his limited English vocabulary, he thought Question 4 only referred to "convictions" and he did not understand the other words such as "arrested" and "charged." Although he is conversational in

English, El Sayed explained that he does not understand all "intelligent word[s]" used in the immigration process and often needed help from his wife or his attorney, but that he filled out the Form N-445 himself. El Sayed also testified that he "wasn't concerned" during his naturalization ceremony that his pending criminal charges were at all relevant to his procurement of citizenship "[b]ecause I'm not guilty."

After initially being unable to reach a verdict as to one charge, the jury convicted El Sayed of both charges. He was sentenced to concurrent terms of twelve months and one day of imprisonment to be followed by concurrent terms of three years of supervised release. This appeal followed. The Government filed a motion to revoke El Sayed's citizenship and cancel his naturalization certificate, which was granted but stayed pending the completion of this appeal. El Sayed concedes that revocation of citizenship is required by 8 U.S.C. § 1451(e) when a person is convicted under 18 U.S.C. § 1425.

## II. DISCUSSION

### A. Sufficiency of the Evidence

El Sayed first asserts that the evidence was insufficient to convict him of each charge. This Court must affirm the conviction "if the evidence, viewed in the light most favorable to the government, would allow a rational trier of fact to find the defendant guilty beyond a reasonable doubt." *United States v. Ramirez*, 635 F.3d 249, 255 (6th Cir. 2011) (quoting *United States v. Solorio*, 337 F.3d 580, 588 (6th Cir. 2003)). "This standard is a great obstacle to overcome and presents the appellant in a criminal case with a very heavy burden." *Id.* at 256 (citations and internal quotation marks omitted).

El Sayed's argument on appeal is the same as the defense he presented at trial: he did not

*knowingly* answer the question falsely on the form or to the agent because he thought the question

asked only whether he had been convicted of an offense, not whether he had been arrested or

charged. The Government responds that El Sayed's argument "is nothing more than a claim that the

jury should have believed him when he denied guilt," a basis that is "wholly insufficient" for reversal

because appellate courts may "not reweigh the evidence, re-evaluate the credibility of witnesses, or

substitute our judgment for that of the jury." *See United States v. Fisher*, 648 F.3d 442, 450 (6th Cir.

2011) (citation omitted). We disagree with the Government's legal position on this point. Although

the jury's rejection of a defendant's "excuses" after witnessing his demeanor and testimony at trial

is "entitled to a high degree of deference," *United States v. Hunt*, 521 F.3d 636, 647 (6th Cir. 2008),

this Court has held that such deference is not dispositive in a sufficiency of the evidence challenge

on appeal:

> The district court is correct that assessment of the credibility of the witness lies within the province of the jury. In reviewing the sufficiency of the evidence, however, the court of appeals must not "allow the jury's discrediting of the defendant's testimony to make up for a shortfall in the sufficiency of the government's evidence." *United States v. Toms*, 136 F.3d 176, 182 (D.C. Cir.1998). The reason for this rule, first articulated by Judge Learned Hand in 1952, is that "[t]here is no principled way of deciding when the government's proof, less than enough to sustain the conviction, is nevertheless enough to allow adding negative inferences from the defendant's testimony to fill the gaps." *United States v. Zeigler*, 994 F.2d 845, 850 (D.C. Cir.1993) (applying *Dyer v. MacDougall*, 201 F.2d 265 (2d Cir. 1952)). Although the sufficiency-of-the-evidence standard is highly deferential to the jury, we cannot let this deference blind us on review to the government's burden to prove guilt beyond a reasonable doubt. Regardless of whether the jury believed Bailey or Stanford's oral testimony that Bailey did not have control over the firearm found by the police underneath Bailey's seat, the prosecution had the burden of producing sufficient evidence to convict.

No. 11-4000
*USA v. Imad El Sayed*

*United States v. Bailey*, 553 F.3d 940, 946-47 (6th Cir. 2009).

However, the Government accurately highlights independent proof from which the jury reasonably could have found El Sayed guilty beyond a reasonable doubt. Most importantly, the jury had ample opportunity to assess El Sayed's knowledge of English based on: evidence that he had lived, worked, and studied in the United States for several years; the secret recordings of the investigatory interviews in which he discussed his answers; testimony from his wife and government investigators about his language skills; and, his language abilities during his own testimony—for which he did not use a translator. The jury also heard that El Sayed was told by his attorney and an immigration officer that arrests as well as convictions had to be disclosed on his Form N-400, and that he properly did so.[1] Moreover, the jury had the opportunity to read the expansive, unambiguous question at issue in Form N-445 and listen to the surreptitious recording in which El Sayed explained his answer. Viewing this independent evidence in the light most favorable to the Government and considering it in conjunction with the deference we afford to the jury's credibility determinations, we hold the jury rationally could have found beyond a reasonable doubt that El Sayed knowingly provided false information on his Form N-445 to procure naturalization and that he knowingly made a materially false statement to a federal agent.

---

[1]While Form N-445 asked whether he had been "arrested, cited, charged, indicted, convicted, fined or imprisoned" in a single question, Form N-400 contained three separate questions asking whether he had been "arrested, cited or detained," "charged," and "convicted," respectively.

**B. Acceptance of Responsibility Reduction**

El Sayed asserts he was erroneously denied a Sentencing Guidelines reduction for "clearly demonstrat[ing] acceptance of responsibility for his offense" pursuant to USSG § 3E1.1. We review the district court's determination for clear error and afford "great deference" because the "sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility." *United States v. Theunick*, 651 F.3d 578, 588 (6th Cir. 2011) (quoting USSG § 3E1.1 cmt. n.5). The Application Notes provide that "[t]his adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt." USSG § 3E1.1 cmt. n.2. Accordingly, a defendant should only receive this reduction after conviction by trial in "rare situations" in which a defendant "demonstrate[s] an acceptance of responsibility for his criminal conduct" but challenges "issues that do not relate to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct)." *Id.*

According to El Sayed, "[t]his is a rare situation where an individual has admitted the conduct, but he went to trial because it was his position that he did not knowingly commit the offenses." This argument fails to recognize that whether a defendant harbors criminal intent *is* "an essential factual element of guilt." *United States v. Reaume*, 338 F.3d 577, 583 (6th Cir. 2003); *see Apprendi v. New Jersey*, 530 U.S. 466, 493 (2000) ("The defendant's intent in committing a crime is perhaps as close as one might hope to come to a core criminal offense 'element.'"). Accordingly, this Court has held repeatedly that admitting the actus reus while denying the mens rea element of an offense does not entitle a defendant to a reduction under § 3E1.1. *E.g.*, *United States v.*

*Christopher*, 91 F. App'x 471, 474 (6th Cir. 2004); *Reaume*, 338 F.3d at 583; *United States v. Mahan*, 190 F.3d 416, 427 (6th Cir. 1999); *United States v. Lutz*, 154 F.3d 581, 589 (6th Cir. 1998). We find no error in the district court's refusal to apply the reduction.

### III.  CONCLUSION

For the reasons above, we **AFFIRM** El Sayed's conviction and sentence.