CLAY, Circuit Judge,
concurring in part and announcing the judgment as to Defendant ANTHONY HAYNE.
I agree with Judge Cole that Defendants Wright, Baxter, and Stevens qualify for the terrorism enhancement of U.S.S.G. § 3A1.4, and I concur in affirming their sentences. Furthermore, the district court did not err in applying the terrorism enhancement to Defendant Hayne. We therefore AFFIRM his sentence as well.
Hayne met Wright six months before the attempted bombing of the Route 82 bridge. Within a few weeks of meeting, Wright was telling Hayne about plans to bomb buildings and bridges. For one of these plots, Wright discussed “creating a distraction on the Detroit-Superior Memorial Bridge in order to draw police from downtown Cleveland, and then, in the absence of police, committing violent acts.” (R. 228, Hayne Sentencing Op., at 3392-93.) Hayne thought these plots were “kind of cool.” (R. 179, Sentencing Hrg. Tr., at 2455.) In early November 2011, Wright asked Hayne if he knew how to procure explosives. At around the same time, Hayne was building and detonating smoke bombs — something Wright derided as “pussy shit.” (Id. at 2457.) Wright and Baxter told Hayne just a month before the bombing about another plot they had in the works, albeit in vague terms.
On April 29, 2013, Hayne accompanied Wright, Baxter, and the “confidential human source” to a hotel room where they purchased two bombs from what turned out to be an undercover FBI agent. But the agent delivered more than bombs — he also gave the group ballistic vests, smoke grenades, and gas masks that Wright and Baxter had previously ordered. The next day, Hayne acted as lookout while his co-defendants planted the bombs on a support column of the Route 82 bridge. Once the devices had been planted, Stevens told the others “This is the biggest act of terrorism in Cleveland since the 1960s.” (Hayne Sentencing Op. at 3394.) Hayne and his codefendants then drove to an Applebee’s and attempted to blow up the bridge.
*418 Based on these facts, the district court did not clearly err when it applied the terrorism enhancement of U.S.S.G. § 3A1.4 to Hayne. To briefly summarize the applicable standard, § 3A1.4 applies to two categories of offenses: (1) felonies that “involved ... a federal crime of terrorism”; and (2) felonies that were “intended to promote! ] a federal crime of terrorism.” The statutory definition of “federal crime of terrorism” has two elements, and the government must establish both by a preponderance of the evidence: (1) the offense must be “calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct;” and (2) the offense must be one of the crimes listed in the statute. 18 U.S.C. § 2332b(g)(5).
The first category in § 3A1.4 is applicable to cases like the one before us now— cases where the crimes of conviction are found among the enumerated terrorism offenses of 18 U.S.C. § 2332b(g)(5)(B). See United States v. Graham, 275 F.3d 490, 516 (6th Cir.2001). The second category in § 3A1.4 applies when the defendant’s crime of conviction is not one of the enumerated terrorism offenses. In these cases, the government must prove by a preponderance of the evidence that “the defendant has as one purpose of his substantive count of conviction or his relevant conduct the intent to promote a federal crime of terrorism.” Id. Whichever § 3A1.4 category applies, the government must also prove by a preponderance of the evidence that the defendant’s offense was “calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct.” 18 U.S.C. § 2332b(g)(5)(A). We now hold that this element requires the government to prove that the defendant specifically intended to influence or affect the conduct of government, and that a “defendant has the requisite intent if he or she acted with the purpose of influencing or affecting government conduct and planned his or her actions with this objective in mind.” Supra at 408. We do not require that this intent be the defendant’s only purpose in committing the offense. So long as the defendant intended to influence to conduct of government, the terrorism enhancement will apply even if the defendant also harbored other motivations, such as an intent to gain financial reward or impress a sweetheart. See United States v. Awan, 607 F.3d 306, 316-18 (2d Cir.2010).
The specific intent standard we announce today is a legal issue concerning the proper construction of the Guideline and the statute. However, whether a defendant “actually harbored such an intent is a question of fact.” United States v. Reaume, 338 F.3d 577, 583 (6th Cir.2003). We review the district court’s finding that the requisite intent existed for clear error. See Graham, 275 F.3d at 513-14, 518-19. “Based on our review of the record, we cannot say that the district court’s findings of fact are clearly erroneous.” Id. at 518.
Hayne is correct that he came into the plot to blow up the Route 82 bridge relatively late in the day. But the record shows Hayne knew that this bombing was part of a larger scheme, of which Wright was the mastermind. Wright had told Hayne about plans to bomb other major pieces of infrastructure. Hayne saw the undercover agent deliver gear that would be used for future acts of terrorist violence — not the Route 82 bridge bombing. Hayne testified that the goal of destroying the Route 82 bridge was to “[s]top the transportation of the 1 percent” (Sentencing Hrg. Tr. at 2459), but the coconspira-tors did not choose to spark class conflict by attacking a private installation. Cf. United States v. Tankersley, 537 F.3d 1100, 1107 n. 7 (9th Cir.2008) (noting that the district court had not applied the ter *419 rorism enhancement where the target was a private facility and the bombers’ commu-niqué spoke only of corporate greed). A district court need not wait for the defendant to confess a specific intent to influence the government. The court can find this intent based on circumstantial evidence and reasonable inferences from the facts presented. See supra at 408-10. The record in this case establishes that Hayne knew his coconspirators were engaged in a larger scheme of terrorist violence. Knowing this, Hayne decided to join the conspiracy to blow up the Route 82 bridge. The district court did not clearly err when it determined that Hayne personally intended to influence or affect the conduct of government by destroying this major piece of government infrastructure. See United States v. El-Mezain, 664 F.3d 467, 571 (5th Cir.2011); United States v. Hammoud, 381 F.3d 316, 356 (4th Cir.2004), vacated on other grounds, 543 U.S. 1097, 125 S.Ct. 1051, 160 L.Ed.2d 997 (2005); United States v. Mandhai, 375 F.3d 1243, 1248 (11th Cir.2004).
For these reasons, the district court’s sentence of Hayne is AFFIRMED.