NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0291n.06

No. 23-1614

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Jul 08, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| v. | ) | |
| MICHELLE MYRICKS, | ) | |
| Defendant-Appellant. | ) | OPINION |

Before: SUTTON, Chief Judge; CLAY and BUSH, Circuit Judges.

**CLAY, Circuit Judge.** Defendant Michelle Myricks challenges her conviction and sentence for several counts of wire fraud committed against her former employer, Great Trades, in violation of 18 U.S.C. § 1343. Myricks argues that the district court erred in admitting certain prejudicial "other acts" evidence and in calculating her restitution amount. Finding no error in these decisions, we **AFFIRM**.

## I.  BACKGROUND

### A.  Factual Background

Defendant Michelle Myricks worked at Great Trades, LLC, an organization that offers educational resources for students to learn investing and finance skills, from October 2016 to December 2017. Myricks was the office manager whose duties included, among other things, sending monthly salary reports to a third-party payroll vendor, which would then issue paychecks based on the information provided to them by Myricks. In December 2017, Myricks' co-worker reported to Myricks' supervisor, Robert Bolya, the monetary figures that Myricks requested for

herself from Great Trades' payroll manager, suspecting that Myricks was inflating the figures beyond her legitimate earnings. Bolya contacted the police. Days later, Myricks was terminated. The government began an investigation into wire fraud, finding that Myricks had requested around $400,000 from the payroll vendor despite earning a salary only around $33,000–$48,000 per year.

As relevant to this case, Myricks requested public assistance before, during, and after her employment at Great Trades. Prior to working at Great Trades, Myricks received food stamp and cash assistance benefits from the Michigan Department of Health and Human Services ("MDHHS"). In December 2016, after Myricks started working at Great Trades, Myricks falsely listed her salary as $500 per month on an MDHHS form. Additionally, two months after her employment with Great Trades ended, Myricks applied for unemployment benefits from the Michigan Department of Talent and Economic Opportunity ("MDTEO"). On that application, Myricks listed her former salary as $33,000 annually.

### B. Procedural Background

For taking more money from Great Trades than what she was supposed to earn, the government indicted Myricks on four counts of wire fraud. According to the indictment, Myricks instructed the payroll vendor to pay her more than $400,000 over the course of fourteen months, over $350,000 more than her authorized salary of approximately $48,000 per year. The superseding indictment references four specific wire transfers, totaling $64,748.07, that Myricks received after instructing the payroll specialists to pay her more than her salary. However, the government also proffered evidence at trial and sentencing that Myricks' scheme defrauded Great Trades of a total of $400,162.71 and that, during the relevant period, the payroll vendor deposited a total of $346,185.33 into Myricks' bank account.

Before trial, the government sought to introduce Myricks' communications with the Michigan public assistance agencies, MDTEO and MDHHS, as evidence relevant to her Great Trades wire fraud. Myricks filed a motion in limine, arguing that these statements were neither relevant nor probative, and would be unfairly prejudicial. The district court overruled Myricks' motion and admitted the evidence associated with Myricks' statement to MDHHS that she was earning only $500 per week, as well as Myricks' application for unemployment benefits that included the statement that she earned $33,000 annually at Great Trades. The district court held that the application for unemployment benefits was part of the Great Trades fraud, and that the statement that she was earning only $500 per week was indicative of Myricks' consciousness of guilt and intent to defraud.

At trial, the government put on several witnesses, including the law enforcement agent who investigated the fraud, as well as several Great Trades employees to explain Myricks' role at the company, her relative salary, and why there was no legitimate purpose for her to request so much money from the payroll vendor. The government also put forth documentary evidence such as: (1) Myricks' emails to the payroll administrator over the course of fourteen months, in which she requested a total of $400,162.71; (2) Myricks' bank records which showed payroll deposits totaling $346,185.33; (3) Myricks' offer letter listing her salary as the substantially lower figure of $33,000; and (4) documents showing that Myricks was entitled, at most, to $47,569.34.

Myricks' only defense at trial was that she was authorized to be paid on commission, over and above her salary, based on her negotiation of student contracts. In other words, Myricks argued that she was entitled to the funds she instructed the payroll vendor to provide, and there was therefore no scheme or intent to defraud. Myricks was unable to offer proof of such contracts

at trial. For its part, the government put forth substantial proof that Myricks was not paid on commission, but rather was a salaried employee making in the range of $33,000–$48,000 per year.

Myricks was convicted at a jury trial of four counts of wire fraud and proceeded to sentencing. The presentence report ("PSR") lists the total amount that Myricks embezzled as $352,593.37, based on the difference between the amount Myricks requested from the payroll vendor—$400,162.71—and what the PSR listed as her salary—$47,569.34.[1] The district court sentenced Myricks to a term of 24 months' imprisonment, and ordered Myricks to pay restitution to the partner-owners of Great Trades in the amount of $352,593.37. Myricks' attorney did not object at sentencing to this restitution amount.

## II. DISCUSSION

### A. Myricks' Evidentiary Claim

Myricks argues that the district court erred in admitting her statements to the Michigan public assistance agencies. As a preliminary matter, the parties dispute whether this evidence was admitted under Federal Rule of Evidence 404(b) and therefore reviewable *de novo*. *United States v. Barnes*, 822 F.3d 914, 920–21 (6th Cir. 2016). Myricks argues that, because the public benefits evidence is not "intrinsic" evidence that is relevant to the crime of conviction, it is "other act" evidence such that Rule 404(b) applies. In response, the government argues that the evidence was intrinsic to the crime charged and that 404(b) therefore does not apply. *See United States v. Sumlin*, 956 F.3d 879, 889 (6th Cir. 2020).

---

[1] Throughout the trial, there was a lack of clarity as to Myricks' exact salary. The PSR notes that Myricks' salary was only $33,000 per year. But the PSR also claims that Myricks was entitled to receive only $47,569.34 per year. This number was calculated by adding one pro-rated payment of $1,818.55 for the month of October 2016, plus 27 payments of Myricks' bi-monthly authorized payroll of $1,584 from November 2016 to December 2017, plus two authorized bonuses of $1,521.44 and $1,461.35. It is this latter figure, $47,569.34, that appears to be most accurate and that, as discussed below, the district court used in calculating the restitution amount.

The government is incorrect, and the "other act" analysis pursuant to 404(b) applies. This evidence is not "intrinsic" evidence that is probative of the crime charged. "Evidence of uncharged criminal activity is not considered other crimes evidence under Fed. R. Evid. 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *United States v. Price*, 329 F.3d 903, 906 (6th Cir. 2003) (cleaned up) (quoting *United States v. Towne*, 870 F.2d 880, 886 (2d Cir. 1989)). Myricks' statements to the state agencies do not pass this test. First, the statements do not arise out of the same transaction as the charged offense, as they do not involve defrauding Great Trades of any money. Second, because the relevant evidence of Myricks' bank statements and emails can stand alone, independent of her submissions to the public assistance agencies, these statements are not inextricably intertwined with the evidence regarding the Great Trades fraud. Third, for similar reasons, the statements are not necessary to complete the story of the Great Trades fraud on trial. Therefore, we must evaluate this evidence as Rule 404(b) "other act" evidence.

Rule 404(b) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, the rule provides for admissibility of such evidence for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). "Trial courts employ a three-part test to determine the admissibility of 404(b)(2) evidence." *Barnes*, 822 F.3d at 920. The district court must consider: "(1) whether there is sufficient evidence that the other act in question actually occurred; (2) whether the evidence of the other act is probative of a material issue other than character; and (3) whether the probative value

of the evidence is substantially outweighed by its potential prejudicial effect." *United States v. Emmons*, 8 F.4th 454, 474 (6th Cir. 2021) (citation omitted). As to the probative value of the evidence, the trial court must analyze whether: "(1) the evidence is offered for an admissible purpose, (2) the purpose for which the evidence is offered is material or 'in issue,' and (3) the evidence is probative with regard to the purpose for which it is offered." *Id.* (citation omitted).

In this case, the aforementioned evidence is probative of a material issue other than character—Myricks' intent. Myricks put her intent at issue because her sole defense at trial was that she lacked the requisite intent to defraud Great Trades because she thought she was entitled to the money she requested from the payroll vendor. Myricks' theory was that she was owed commission on certain contracts she helped negotiate, and that this commission agreement explained her inflated payments from the payroll company. If she was only requesting what she believed she was owed, Myricks argued, then she did not have the requisite intent to defraud.

Once intent was at issue, the government was then allowed to introduce "other acts" evidence to rebut this defense. *See United States v. Johnson*, 27 F.3d 1186, 1192 (6th Cir. 1994) ("[W]here there is thrust upon the government, either by virtue of the defense raised by the defendant or by virtue of the elements of the crime charged, the affirmative duty to prove that the underlying prohibited act was done with a specific criminal intent, other acts evidence may be introduced under Rule 404(b)."). And Myricks' statements to the Michigan agencies rebut her defense because they contradict Myricks' claim that she earned any commission. Myricks' statements that she earned $500 per month and $33,000 per year included no mention of commission payments, and are substantially lower than the $400,000 she requested from Great Trades. The statements therefore undermine her claim that she lacked the requisite intent to defraud. Accordingly, the statements were admissible for the permissible 404(b) purpose of intent.

Still, under Rule 403 of the Federal Rules of Evidence, the evidence is admissible only if the probative value is not substantially outweighed by a risk of unfair prejudice. *Emmons*, 8 F.4th at 474. When conducting this analysis, we "must look at the evidence in a light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." *United States v. Brady*, 595 F.2d 359, 361 (6th Cir. 1979). As discussed, this evidence is certainly probative on the issue of intent and to rebut Myricks' sole defense theory. But in considering a piece of evidence's probative value, we must consider the availability of other means of proof. *United States v. Asher*, 910 F.3d 854, 861 (6th Cir. 2018). To be sure, the government introduced other evidence to rebut Myricks' defense that she was entitled to the payments, namely, several Great Trades employees who testified that Myricks was not paid on commission. Nevertheless, "[t]he Supreme Court has cautioned that the existence of an alternative means of proof—even one with substantially the same or greater probative value but a lower danger of unfair prejudice—does not require exclusion of more prejudicial evidence." *Id.* (citation omitted). In this case, the evidence had strong probative value, as it involved Myricks' own disclosures to third parties that did not list her purported commission payments. And Myricks' arguments that the evidence is especially prejudicial are unavailing. *See, e.g.*, *United States v. Mandoka*, 869 F.3d 448, 459 (6th Cir. 2017); *United States v. Davis*, 707 F.2d 880, 884 (6th Cir. 1983) ("[T]he chance of prejudice is always present in a 404(b) situation . . . ."). The alleged prejudice that Myricks claims—that this was misleading propensity evidence—does not *substantially* outweigh its strong probative value in undermining Myricks' sole defense theory, as it must for exclusion under Rule 403. Even if the evidence was admitted in error, it was likely harmless, given the wealth of other evidence to convict Myricks—including the emails in which she told Great Trades she was entitled to hundreds of thousands of dollars more than her salary, and the bank statements that indicated how much

money she defrauded Great Trades from over time. *Cf. United States v. Sadler*, 24 F.4th 515, 556 (6th Cir. 2022) (declining to reverse where a rational jury could have found guilt beyond a reasonable doubt without considering the challenged evidence). Therefore, Myricks cannot prevail on her evidentiary claim.

## B. Myricks' Sentencing Claim

Myricks challenges the district court's determination of the restitution amount that it ordered Myricks to pay. Because her counsel did not object to the district court's calculations at sentencing, we review this claim for plain error. *United States v. Reaume*, 338 F.3d 577, 585 (6th Cir. 2003). "To establish plain error, a defendant must show: (1) that an error occurred in the district court; (2) that the error was plain, i.e., obvious or clear; (3) that the error affected substantial rights of the defendant; and (4) that this adverse impact seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *Id.*

Myricks cannot satisfy this demanding standard. She argues that the district court erred in determining that she owed $352,593.37 in restitution without sufficient calculation or explanation. This number represents the difference in the amount of money Myricks requested from Great Trades ($400,162.71) and the actual salary to which she was entitled ($47,569.34). At trial, the government produced bank records that indicated that Myricks requested $400,162.71, and that payroll deposited $346,185.33 into her bank account. The government explained at trial and on appeal that $346,185.33 was deposited into Myricks' account after taxes were withheld from her requested $400,162.71.

Notably, Myricks puts forth no countervailing documentation, nor does she suggest a specific figure—let alone one supported by evidence—that she argues should have been used to calculate restitution. Rather, she relies only on the lack of clarity on her exact salary figure to

argue that the district court erred in determining restitution when such confusion existed. True, there is conflicting evidence in the record about whether her salary was $33,000 or $47,569.34. But the government used the latter figure by calculating Myricks' legitimate bi-monthly disbursements plus two legitimate bonuses. The government then subtracted this sum from the total amount that Myricks requested from payroll ($400,162.71) to arrive at the final restitution amount: $352,593.37, which the district court adopted with no objection from Myricks' attorney. This evidence is sufficient for the preponderance of the evidence standard, particularly when Myricks failed to object or put forth any other figure that would arguably be more appropriate.

Myricks also argues that the district court erred by ordering a restitution amount that exceeded Great Trades' loss. In particular, Myricks claims that the district court ordered her to pay a windfall of at least $53,977.38 that she may have requested via email, but never actually received. Def. Br., ECF No. 28, 32 (referring to the difference between her requested sum of $400,162.71 and the $346,185.33 that was deposited into her account). Myricks argues that restitution must be based on actual loss as opposed to intended loss, and that this sum is therefore in error. *Cf. United States v. Younes*, 194 F. App'x 302, 317 (6th Cir. 2006). But this amount is explained by tax withholdings. A government witness explained at trial that $346,185.33 was deposited into Myricks' account after the payroll vendor withheld taxes from the $400,162.71 it took from Great Trades at Myricks' instruction. In other words, the $400,162.71 is not intended loss—which we agree would be impermissible for the district court to award as restitution—but rather money that the company actually lost, because Myricks' fraud required it to pay additional taxes. That Myricks did not personally receive the full $400,162.71 does not mean her fraud did not deprive the company of that amount. *See United States v. Kilpatrick*, 798 F.3d 365, 390 (6th Cir. 2015) (noting that the measure of restitution is the victim's loss, not the defendant's gain).

Once the withheld taxes are added to what Myricks received, $346,185.33, the total amount that Myricks caused the company to lose is $400,162.71. We then subtract from that amount the money that Myricks was legitimately owed as a salaried employee, $47,569.34, because it would make little sense to require Myricks to pay back her rightful salary. *Cf. United States v. Boring*, 557 F.3d 707, 714 (6th Cir. 2009) ("[T]he district court may not include in its calculation of a restitution award the worker's compensation payments to which [the defendant] was legitimately entitled, since those do not constitute losses to the victim and thus are not properly the subject of restitution."). Once this arithmetic is complete, we arrive at the same figure of restitution that the government requested, and that the district court granted: $352,593.37.

In short, none of Myricks' arguments persuade us that the district court erred, let alone in such a way that affected her substantial rights, as required for plain error review.

## CONCLUSION

For the reasons stated above, the judgment of the district court is **AFFIRMED**.